### Peter GUCKENBERG and Susan Guckenberg, Plaintiffs,

v.

### WISCONSIN CENTRAL LTD. and FOX VALLEY & WESTERN LTD., Defendants.

No. 00–CV–691.

United States District Court, E.D. Wisconsin.

Dec. 19, 2001.

Charles D. Koehler, Herrling Clark Hartzheim & Siddall, Appleton, WI, for Plaintiffs.

James A. Fletcher, James D. Helenhouse, Fletcher & Sippel, Chicago, IL, for Defendants.

## DECISION AND ORDER

RANDA, District Judge.

The defendants, Wisconsin Central Ltd. and Fox Valley & Western Ltd. (collectively "WCL"), are both Illinois corporations which provide rail transportation services in Wisconsin, Minnesota, Illinois, and the Upper Peninsula of Michigan ("U.P."). On March 30, 2000, the plaintiffs, Peter and Susan Guckenberg ("the Guckenbergs"), residents of the Town of Menasha, Wisconsin, commenced a suit against WCL in the Circuit Court of Winnebago County. The complaint alleges that the defendants' actions in operating railway traffic amounts to a common law nuisance under Wisconsin law, unreasonably interfering with the use and enjoyment of their property. The

action was properly removed to this Court on the basis of diversity jurisdiction. Now before the Court is the defendants' motion for summary judgment. WCL argues that the plaintiffs' cause of action is preempted by the ICC Termination Act of 1995 ("ICCTA"). Also before the Court is the plaintiffs' motion for leave to file a second amended complaint. For the reasons stated below, WCL's motion for summary judgment is granted, the Guckenbergs' motion for leave to file an amended complaint is denied, and the case is dismissed.

## BACKGROUND

WCL operates three principal rail lines. Defendant's Proposed Findings of Fact ("DPFF"), ¶¶ 5–6. The first line runs from Schiller Park in Chicago through Fond du Lac, Wisconsin to Neenah, Wisconsin. The second line runs west and north from Neenah to Owen, Wisconsin, where it splits, with one portion running to Superior, Wisconsin and the other portion running to St. Paul, Minnesota (the "St. Paul/Superior line.") The third line runs north and east from Neenah to Green Bay, Wisconsin and then north to the U.P. (the "Green Bay line.") DPFF, ¶ 7.

Because it facilitates the movement of cars on all three of its rail lines, the freight yard at Neenah plays a critical role in WCL's day-to-day operations. This, in addition to significant growth in the overall amount of WCL's rail traffic, caused the freight yard in Neenah to become a "clogged bottleneck." *Id.,* ¶ 17. Accordingly, in 1997, WCL decided to build two new "side tracks," one north of Neenah and one south of Neenah. These side tracks allow trains operating in opposite directions on the mainline near Neenah to safely and efficiently pass each other. The new tracks also provide track capacity for cars that could not be handled in the Neenah yard. *Id.,* ¶¶ 19–22. For one of the

side tracks, WCL decided on a location between Stroebe Road and Towman Road near Menasha. *Id.,* ¶ 24.

The Guckenbergs reside at 2286 W. Butte des Morts Road, Menasha, just outside of Neenah. They built their home in 1991 on land that had been owned by the Guckenberg family since the 1800's. Amended Complaint, ¶ 4. WCL's new track switching system, completed in 1998, was built directly across the street from the Guckenbergs' residence. Their home is 170 feet from the new side track. *Id.,* ¶ 7. Plaintiffs allege that the coupling and uncoupling of trains, squealing of wheels, braking noises, slamming of cars, switching direction of train travel, flying switches of railroad cars, idling locomotive diesel engines and other similar incidents occur as many as 60 times per month, lasting as long as several hours per episode. *Id.,* ¶ 9. Plaintiffs seek redress under Wisconsin's common law of nuisance and pray for both actual and punitive damages.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment is no longer a disfavored remedy. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct.

2548. It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.*, 794 F.Supp. 328, 330 (E.D.Mo.1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a *material* fact is one that is "outcome determinative under the governing law", *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir.1990), a *genuine* issue as to that material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "district judge faced with [a summary judgment motion] must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted). Therefore, summary judgment should be utilized "when it can be shown that a trial would serve no useful purpose." *Windham v. Wyeth Laboratories, Inc.*, 786 F.Supp. 607, 610 (S.D.Miss. 1992).

## II. PREEMPTION

### A. *General Principles*

■■ Article VI of the United States Constitution states that "the Laws of the United States ... shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Accordingly, a state law which conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Courts have recognized three categories of preemption: (1) *express preemption*, where Congress' intent to preempt state law is "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); (2) *field preemption*, where federal law "thoroughly occupies a legislative field." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); and (3) *conflict preemption*, where "it is impossible for a private party to comply with both state and federal requirements or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)) (internal citations omitted). In any preemption analysis, "the purpose of Congress is the ultimate touchstone." *Cipollone* at 516, 112 S.Ct. 2608. This intent is "primarily discerned from the language of the preemption statute, and the statutory framework surrounding it." *Medtronic, Inc. v. Lohr*, 518 U.S. 470,

486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

## B. *Express Preemption*

■ The ICCTA, which became law on January 1, 1996, abolished the Interstate Commerce Commission and replaced it with the Surface Transportation Board ("STB"). 49 U.S.C. § 10101, *et seq.*. The ICCTA provides as follows:

> (b) The jurisdiction of the [STB] over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, *operation*, abandonment, or discontinuance of spur, industrial, team, switching, or *side tracks*, or facilities, *even if the tracks are located, or intended to be located, entirely in one State,*
>
> is *exclusive*. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are *exclusive and preempt* the remedies provided under Federal or State law.

49 U.S.C. § 10501(b) (emphasis added). One court noted that it "is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." *CSX Transp., Inc. v. Georgia Public Service Comm.*, 944 F.Supp. 1573, 1581 (N.D.Ga. 1996). Indeed, the language is "clear and broad," and it is apparent that the "ICCTA has preempted all state efforts to regulate rail transportation." *Wisconsin Central Ltd. v. City of Marshfield*, 160 F.Supp.2d 1009, 1013 (W.D.Wis.2000).

■ The Court concludes that the Guckenbergs' common law nuisance action is preempted. Because the conduct at issue in this case pertains to the "operation . . . of a side track . . . intended to be located, entirely in one State," the STB's jurisdiction over WCL's conduct is "exclusive." § 10501(b)(2). Furthermore, because the Guckenbergs' cause of action qualifies as "regulation," it is expressly preempted by the statute because "the remedies provided under [§ 10501] with respect to rail transportation are exclusive and preempt the remedies provided under Federal or State law." § 10501(b). Indeed, "'state regulation can be as effectively exerted through an award of damages as through some form of preventive relief.'" *Cipollone* at 521, 112 S.Ct. 2608 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)). Under the plain terms of § 10501(b), Wisconsin cannot provide its citizens with "remedies," such as a suit at common law, to redress the effect of WCL's operation of its side track because the remedies provided under the Act are "exclusive and preempt" all other remedies.

This conclusion is supported by the applicable case law. In *Friberg v. Kansas City Southern Railway Company*, 267 F.3d 439 (5th Cir.2001), plaintiffs brought a complaint alleging negligence and negligence *per se* in the defendants' operation of a side track. The district court denied the defendants' motion for summary judgment, but the Fifth Circuit reversed, holding as follows:

> The language of the statute could not be more precise, and it is beyond peradventure that regulation of [the defendant's] train operations, as well as the construction and operation of the . . . side tracks, is under the exclusive jurisdiction of the STB unless some other provision in the ICCTA provides otherwise. The regula-

tion of railroads has long been a traditionally federal endeavor, to better establish uniformity in such operations and expediency in commerce, and it appears manifest that Congress intended the ICCTA to further that exclusively federal effort.

*Friberg,* 267 F.3d at 443. Accordingly, the *Friberg* court dismissed the plaintiffs' common law causes of action because they were preempted by the ICCTA. In *Village of Ridgefield Park v. New York, Susquehanna & Western Railway Corp.,* 163 N.J. 446, 750 A.2d 57 (2000), the Supreme Court of New Jersey dismissed a nuisance claim, holding that "our courts cannot adjudicate common law nuisance claims against the Railroad because to do so would infringe on the STB's exclusive jurisdiction over the location and operations of railroad facilities." *Village of Ridgefield,* 750 A.2d at 67. Also, in a recent STB decision, *Joint Petition for Declaratory Order—Boston and Maine Corporation and Town of Ayer, MA,* Finance Docket No. 33971, the STB found that an ordinance "determining that automobile unloading facilities are a 'noisome trade' or nuisance ... [is] preempted under 49 U.S.C. § 10501(b) and the court and agency decisions interpreting it." Exhibit A, Defendant's Brief in Support of Motion for Summary Judgment, pp. 1–2.

The case law cited by plaintiffs is inapposite. In *In re Vermont Railway,* 769 A.2d 648 (Vt.2000), the Vermont Supreme Court addressed the application of various zoning ordinances to a facility owned by Vermont Railway and used for the storage of equipment and freight. The Court held that certain regulations were not preempted by the ICCTA, including restrictions on the routing and number of trucks leaving the facility, the hours during which trucking can occur at the facility, parking, and conditions designed to curb potential contamination from the storage of salt. *Vermont Railway* at 655. The Court held: "These conditions do not interfere with *railway* operations; they merely address traffic issues and concerns with environmental contamination, matters properly within the province of municipalities by virtue of the state's delegation of its traditional police powers." *Id.* (Emphasis in original). By contrast, the nuisance claim in the case at bar *would* interfere directly with day-to-day railway operations. It seeks to proscribe activity undertaken by WCL employees while conducting and facilitating traffic on their side track.

Plaintiffs also cite *Union Pacific Railroad Company v. State Corporation Commission,* 990 P.2d 328 (1999). In *Union Pacific,* the Oklahoma Court of Appeals upheld an order that the railroad repair or build fencing along its unused right-of-way next to certain private property. The Court held that since the right-of-way was not being used to conduct rail traffic, and it is not considered a "facility" of the railroad, it did not fall within the express preemption provision of the ICCTA. *Union Pacific* at 330. Furthermore, the Court looked to 49 U.S.C. § 20106 which "provides that a state may adopt or continue to enforce a law related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the state law." *Id.* Accordingly, the Court relied upon the safety regulation exception to the ICCTA's general preemption provision. However, in the case at bar, safety is not an issue, and the plaintiffs have not identified an exception which applies to their nuisance action.

▪ In summary, an analysis of the plain language of the ICCTA as well as the case law interpreting the ICCTA inevitably leads to the conclusion that the Guckenbergs' common law nuisance claim is

preempted. WCL's motion for summary judgment is granted.[1]

## III. PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

■ Under the Scheduling Order entered by the Court in this case, the parties were given until September 29, 2000 to amend their pleadings. The plaintiffs filed an amended complaint on September 8, 2000. The defendants' motion for summary judgment was filed on May 15, 2001, and on May 31, 2001, the plaintiffs filed their motion for leave to file a *second* amended complaint. The proposed second amended complaint alleges that WCL locomotive conductors have intentionally blown their train whistles while passing the Guckenbergs' home, made obscene gestures directed at Peter Guckenberg while he was working in his front yard, and deliberately revved their engines, all "for no other purpose than to annoy and harass the plaintiffs." Proposed Second Amended Complaint, ¶ 1. These additional allegations may state a claim of intentional harassment which may not be preempted by the ICCTA. The Court need not address this issue, however, because plaintiffs' motion for leave to amend their complaint is, among other things, untimely.

■ The Federal Rules of Civil Procedure provide that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave should be denied if the Court concludes that there was undue delay, bad faith on the part of the movant, or undue

prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Here, plaintiffs are attempting to amend their complaint eight months after the deadline set by the Court has passed. Such a long delay results in a greater presumption against granting leave to amend. *See Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992). Additionally, plaintiffs have not justified their delay. Plaintiffs argue that they inadvertently forgot to tell their attorney about the intentional whistle/horn blowing when their complaint was initially filed. However, the Court allowed the parties time to amend in its scheduling order, and plaintiffs amended their complaint once already. Plaintiffs do not claim that this conduct only began to occur after the lawsuit was filed. Without a justification better than mere "inadvertence," the Court will not allow the plaintiffs to shift the emphasis of their case after the parties have completed discovery. Finally, the Court notes that the plaintiffs moved for leave to amend *after* the defendants moved for summary judgment. This increases "the likelihood that the new claim is being added in a desperate effort to protract the litigation and complicate the defense." *Glatt v. Chicago Park District*, 87 F.3d 190, 194 (7th Cir.1996). In sum, the plaintiffs have not provided "reasons for thinking that the denial of the motion would work a serious injustice," and their motion is denied. *Id.*

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for leave to amend their complaint is DENIED;

---

1. In the alternative, the Court also notes that the plaintiffs did not address WCL's field and conflict preemption arguments. The Court agrees that Congress intended to "occupy the field" of rail transportation regulation, and

also that an award of damages for a common law nuisance claim conflicts with the purposes and objectives of Congress in enacting the ICCTA.

2. Defendants' motion for summary judgment is GRANTED; and

3. The case is DISMISSED.

**SO ORDERED.**