Patsy C. MAYNARD, et al Plaintiffs

v.

**CSX TRANSPORTATION, INC. Defendant/Third Party Plaintiff**

v.

**AEP Kentucky Coal, L.L.C. Third Party Defendant**

No. CIV.A. 01–211–DLB.

United States District Court, E.D. Kentucky, Pikeville.

March 12, 2004.

Lawrence R. Webster, Pikeville, KY, for Plaintiff.

James E. Cleveland, III, Ashland, KY, Neal Smith, Pikeville, KY, for Defendant.

Robert J. Patton, Prestonburg, KY, for Third Party Defendant.

## MEMORANDUM OPINION & ORDER

BUNNING, District Judge.

This matter is before the Court on defendant CSX Transportation's motion for summary judgment. (Doc. # 53) Plaintiff having filed their response (Doc. # 57), to which defendant has filed its reply (Doc. # 62), oral argument on the motion having been conducted, and the defendant having supplemented its motion with an additional memorandum of law (Doc. # 66), this motion is ripe for review.

Also pending before the Court is third-party defendant AEP Kentucky Coal's motion for summary judgment. (Doc. # 67). Neither plaintiffs nor defendant having filed any response to the motion and the time for submitting any response having expired, that motion is also ripe for the Court's review.

### Factual and Procedural Background

Beginning in 1902, the Big Sandy ("Big Sandy") Railway Company, now known as defendant CSX Transportation, began acquiring deeds of easement from landowners in the Pike County, Kentucky area in an effort to obtain right-of-ways for CSX's main railroad line in the area of Plaintiff's properties. Big Sandy acquired a right-of-way from Plaintiffs' predecessors in title in 1902.

It is undisputed that the construction of the main railroad line traversing Plaintiffs' properties occurred sometime thereafter.

Plaintiffs are the owners of three tracts of real property located in Pike County, Kentucky. Plaintiffs acquired the property as the heirs at law of one Ruby Coleman who died on March 29, 2000.

Sometime prior to their acquisition of that real property[1], a railway side track

---

[1]. The exact date of the construction of the side track has not been established in the record. During oral argument the parties indicated that the side track was constructed in 1987. However, the exact date is not necessary to adjudicate the pending motions for summary judgment.

was constructed upon the real property by defendant CSX's predecessor in interest. That side track also traverses Plaintiffs' property and is near the main rail line. According to the uncontested representations of Plaintiffs' counsel during oral argument, houses were built on Plaintiff's property in 1993. Access to those houses is obtained via a crossing which intersects both the main rail line and the side track.

The Plaintiffs' property is located adjacent to AEP Kentucky Coal's coal loading facility. The side track is primarily used by AEP Kentucky Coal when loading coal so that the main rail line is not blocked during the loading process.

Plaintiffs filed their complaint in Pike Circuit Court on June 6, 2001. The case was removed to this Court based on diversity jurisdiction. In their complaint, Plaintiffs have brought state law claims relating to the use of the side track, alleging that CSX has wrongfully, negligently, and carelessly permitted the side track to be blocked by trains for excessive time periods, sometimes in excess of six hours. According to Plaintiffs, this blockage denies them ingress and egress to their places of residence, causing them undue hardships, and diminishing the value of their property. Plaintiffs also allege that by virtue of the side track, CSX has negligently permitted drainage from adjoining properties to escape onto their property which has further diminished the value of their property.

In their prayer for relief, Plaintiffs ask for injunctive relief in the form of requiring the defendant to not block the crossing and to correct their drainage problem. Plaintiffs further seek recovery for diminution in the value of their real property and the value of its use.

## Defendant CSX's Motion for Summary Judgment

In its motion for summary judgment (Doc. # 53), CSX argues that Plaintiffs' state common law claims of nuisance are preempted by the federal Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, *et seq.* CSX specifically argues that 49 U.S.C. § 10501(b) specifically preempts the Plaintiffs' claims. CSX further argues that the preemption is dictated by all three recognized types of preemption: express, field and conflict.

## Plaintiffs' Response

Despite the allegations in their complaint, Plaintiffs argue that CSX has mischaracterized this action as a nuisance action. Plaintiffs assert that this action involves the enforcement of basic contract rights by a state court in matters where right-of-ways were granted by land owners who kept certain crossing rights and those rights are being violated. For that reason, Plaintiffs argue that ICCTA preemption should not bar the Court from resolving their claims in this Court.

Plaintiffs also argue some instances where certain state regulations governing railroads is not preempted by the ICCTA. In support of this latter argument, Plaintiffs rely upon the savings provisions contained in the Federal Railway Safety Act (FRSA)[2]. More particularly, Plaintiffs

---

**2.** The Federal Railway Safety Act (FRSA) is found separate from the ICCTA, in 49 U.S.C. §§ 20101–20153. Plaintiffs use this statute to attempt to prove that there are certain situations where regulatory power is reserved to the states. However, this section is not applicable to this case. Section 20106 of the

FRSA provides three savings clauses precluding preemption. It states:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until

rely upon one of the FRSA's clauses that the *relief requested will not place a substantial burden on interstate commerce.* (emphasis added). Because there is no federal law or regulation which governs trains blocking private crossings, Plaintiffs argue there is no conflict with other regulations which would require preemption. Relying upon the savings provisions in the FRSA, Plaintiffs argue that the test for preemption is whether the railroad is required to make substantial capital improvements to comply with the statute or regulation. Using that test, Plaintiffs submit there should be no preemption because there is no proof that capital improvements by CSX would be necessary to provide them with the relief they seek.

### Standard of Review

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met this initial burden, the non-movant cannot rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Id.* at 324, 106 S.Ct. 2548.

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. However, all evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *Lenning v. Commercial Union Insurance Co.,* 260 F.3d 574, 581 (6th Cir.2001). Applying these principles, the court examines CSX's motion.

### Analysis

█ "Congress and the courts long have recognized a need to regulate railroad operations at the federal level." *City of Auburn v. U.S. Government,* 154 F.3d 1025, 1029 (9th Cir.1998). Further, "Congress' authority under the Commerce Clause to regulate the railroads is well established." *Id.* (citations omitted). In that regard, Congress enacted in 1995 the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101 *et seq.* ("ICCTA"). In enacting the ICCTA, Congress sought to deregulate the railroad industry. Recognizing that the over regulation of the surface transportation industries had led to financial problems for the rail industry, Congress intended for the ICCTA to significantly reduce state and local regulation of railroads. See S.Rep. No. 176, 104th Cong. 1st Sess. 3 (1995). In furtherance of this intended purpose, the jurisdictional section of the ICCTA grants the Surface Transportation Board ("STB") exclusive jurisdiction over nearly all matters of rail regulation. *Cedarapids Inc. v. Chicago, Cent. & Pac. R.R. Co.,* 265 F.Supp.2d 1005 (N.D.Iowa 2003). More specifically, section 10501(b) of the ICCTA grants to the STB exclusive jurisdiction over -

the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order-

(1) is necessary to eliminate or reduce an essentially local safety hazard;
(2) is not incompatible with a law, regulation, or order of the United States Government; and
(3) does not unreasonably burden interstate commerce.

(2) the construction, acquisition, *operation,* abandonment or discontinuance of spur, industrial, team, switching or *side tracks,* or facilities, even if the tracks are located or intended to be located entirely in one state. . . .

Moreover, the ICCTA contains an *express* preemption clause which provides that -

Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are *exclusive* and *preempt the remedies provided under Federal or State Law.* (emphasis added).

The preemptive effect of the last sentence of section 10501(b) has been examined by several federal circuit and district courts which have consistently held that the ICCTA preempts state common law claims with respect to railroad operations.[3] *See, e.g., Friberg v. Kansas City S. Ry. Co.,* 267 F.3d 439, 444 (5th Cir.2001) (ICCTA preempts claims of negligence and negligence per se with respect to railroad's alleged road blockages); *Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co.,* 297 F.Supp.2d 326, 334 (D.Maine, 2003) (state-law tortious interference claim preempted by ICCTA); *Guckenberg v. Wisconsin Cent. Ltd.,* 178 F.Supp.2d 954, 958 (E.D.Wis.2001) (state law nuisance claim with respect to railway traffic is preempted); *Rushing v. Kansas City S. Ry. Co.,* 194 F.Supp.2d 493, 500–01 (S.D.Miss.2001) (ICCTA preempts state law nuisance and negligence claims intended to interfere with railroad's operation of switchyard); *South Dakota R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.,* 280 F.Supp.2d 919, 934–35 (D.S.D.2003) (state law claims for punitive damages and tor-

tious interference are preempted by ICCTA). As discussed in the *Guckenberg* case, a state may regulate through an award of damages under a common law claim as effectively as it may regulate by some form of preventative relief, and thus a state common law cause of action qualifies as "regulation" for purposes of section 10501(b). *Guckenberg,* 178 F.Supp.2d at 958. *See also Friberg,* 267 F.3d at 444 (ICCTA preemption clause does not permit ICCTA "to be circumvented by allowing liability to accrue under state common law, where that liability arises from a railroad's economic decisions")

Federal courts have also consistently held that state and local statutes, regulations and ordinances which involve railway matters do not survive ICCTA preemption challenges. *See, e.g., Friberg,* 267 F.3d at 444 (state anti-blocking statute is preempted by ICCTA); *City of Auburn, supra,* 154 F.3d at 1031 (ICCTA preempts state and local environmental review laws as applied to reopening of rail line); *Railroad Ventures, Inc. v. Surface Trans. Bd.,* 299 F.3d 523, 563 (6th Cir.2002) (state statutes permitting townships to regulate land use and requiring them to keep public roads open and free from nuisance are preempted by ICCTA to the extent the laws intrude upon the STB's exclusive jurisdiction over rail transportation); *Cedarapids, supra,* 265 F.Supp.2d at 1015 (ICCTA preempts state law providing for reversion of railroad right-of-way after abandonment by railroad); *CSX Trans., Inc. v. Plymouth,* 92 F.Supp.2d 643 (E.D.Mich.2000) (statute limiting the amount of time a train can block a grade crossing is preempted under the ICCTA); *Burlington N. Santa Fe*

---

**3.** In its brief in this case, CSX argues that other recognized forms of preemption, namely, field and conflict preemption, could equally be relied upon by the Court to find that Plaintiffs' claims are preempted by the ICC-

TA. In view of the express preemption contained in 49 U.S.C. § 10101(b), the Court need not adjudicate if either field or conflict preemption dictates the same result.

*Corp. v. Anderson,* 959 F.Supp. 1288, 1296 (D.Mont.1997) (state law authorizing state regulation of closure, consolidation, or centralization of railroad agencies is preempted).

In support of its argument that Plaintiffs' claims in this case are strictly common law nuisance claims, CSX points to several of Plaintiffs' discovery responses regarding the allegations in Plaintiffs' complaint. More specifically, CSX relies upon several of Plaintiffs' answers to interrogatories. First, CSX cited to Interrogatory No. 5 which asked:

> State the facts known to the Plaintiffs upon which they base their allegations contained in numerical paragraph 5(A) of the Complaint, setting forth the exact dates and times. (Doc. # 59 at 3).

Plaintiffs answered:

> There is a crossing (crossing one) to out [sic] residential properties on the main line that is blocked anywhere between three and five to seven times per week anywhere from 10 to 40 or 45 minutes each. The side track is blocked irregularly according to train frequency but at peak times will be blocked (with the side track being the primary crossing to the Plaintiffs' homes) about three to five times per week dwindling down at times to maybe once or twice per week and each time it is blocked for about four to eight or more hours. The crossings are blocked three times for each train, once for the placement of the empties, once for the loading and once for the pulling out. The railway will on request, but not always promptly open up the crossing during these times to the residences. A crossing Number Two to the Coleman heirs property is blocked for several hours as well and it is unmanned and there is no one to unblock it. (*Id.* at 3–4).

CSX also relied upon Plaintiffs' answer to Interrogatory No. 6 which asked:

> State the facts known to the Plaintiffs upon which they base their allegations contained in numerical paragraph 5(B) of the Complaint, setting forth the exact dates and locations. (*Id.* at 4).

Plaintiffs answered:

> The track and the foundation of the track blocks natural drainage and it seeps under the railroad tracks without being directed and diffuses itself onto the property primarily of Patsy Maynard, but also on the property of Mary Coleman. In addition the drainage on the crossings is not adequately maintained which leads to them being muddy or otherwise clogged up with materials at times. (*Id.*).

CSX also relies upon Plaintiffs' answer to Interrogatory No. 7 which asked:

> State with specificity the facts known to the Plaintiffs upon which they base their allegations contained in numerical paragraph 6 of the Complaint. (*Id.* at 4).

Plaintiffs answered:

> As owner and contractor of the side track, assuming that the Defendant is it would be negligent for the Defendant to permit its contractee to diminish the value of the Plaintiffs' property. (*Id.* at 4–5).

The allegations in the complaint, including the prayer for relief, when supplemented with Plaintiff's discovery responses set forth herein, compel the Court to conclude that this action is *not* one brought in contract, as suggested by Plaintiffs, but rather, is one alleging common law negligence and nuisance claims.

While the Sixth Circuit has not had occasion to address a case dealing specifically with preemption of common law claims of nuisance or negligence, the Court has cited approvingly in *Railroad Ventures,*

*Inc.* to one such case which involves a claim for common law negligence. In *Friberg, supra,* the Fifth Circuit ruled on a substantially similar situation to what occurred in the case *sub judice.* The plaintiffs in *Friberg* "alleged that they lost business and eventually were forced to close their business because their customers were required to endure long delays in getting to their nursery when the primary access road was blocked by waiting trains." *Railroad Ventures, Inc.,* 299 F.3d at 562. In holding that the plaintiffs' claims were preempted, the court noted that "the language of the statute could not be more precise, and it is beyond peradventure that regulation of KCS trains operations, as well as the construction and operation of the KCS side tracks, is under the exclusive jurisdiction of the STB unless some other provision in the ICCTA provides otherwise." *Friberg,* 267 F.3d at 443–44.

In *Guckenberg, supra,* a case with very similar facts to those herein, the plaintiffs alleged that the actions of the defendants in operating railway traffic unreasonably interfered with their use and enjoyment of their property. The district court held that plaintiffs' common law nuisance claim was preempted by the ICCTA "because the conduct at issue . . . pertains to the 'operation . . . of a side track . . . intended to be located entirely in one State,' the STB's jurisdiction over WCL's is 'exclusive'." 178 F.Supp.2d at 958. In so deciding, the court further labeled plaintiffs' cause of action as a 'regulation' which is expressly preempted by the ICCTA. The court noted that "indeed, [a] state regulation can be as effectively exerted through an award of damages as through some form of preventive relief." *Id.* "Wisconsin cannot provide its citizens with 'remedies,' such as a suit at common law, to redress the effect of WCL's operation of its side track because the remedies provided under the Act are 'exclusive and preempt' all other remedies." *Id.*

In concluding that section 10501(b) of the ICCTA expressly preempts Plaintiff's claims, the Court is persuaded by not only the Sixth Circuit's decision in *Railroad Ventures, Inc.,* but also the *Guckenberg* case as well as the other federal cases which hold that the ICCTA preempts state common law claims with respect to railroad operations.

The side tracks at issue in this case are an essential part of CSX's railroad operations and assist in providing rail service to the AEP Kentucky Coal's loading facility adjacent to Plaintiff's property. But-for the side track, a train being used to transport coal would have to stay on the mainline track, which would interfere with the movement of commerce. The side tracks allow the mainline track to be open for other rail travel, which enhances the movement of commerce on the rail lines. Because of their essential role, side tracks are a vital part of CSX's railroad operations. Because it is CSX's construction and operation of the side tracks in this case which give rise to Plaintiffs' claims, those claims are expressly preempted by the ICCTA.

The decision in *Rushing v. Kansas City Southern Ry. Co.,* 194 F.Supp.2d 493 (S.D.Miss.2001) does not change the Court's ICCTA preemption decision. In *Rushing,* the homeowners brought nuisance and negligence claims against the railroad for noise and vibrations from a switch yard operated by the railroad. *Id.* at 496–97. They also brought claims based on the manner in which the railroad constructed an earthen berm adjacent to their property. *Id.* at 497. The homeowners claimed that the 12–foot berm caused rainwater to pool, which caused damage to their property. *Id.* at 496.

The defendant railroad made a motion to dismiss based on lack of federal subject matter jurisdiction. *Id.* at 497.

Consistent with other federal cases, the court found that the ICCTA provides that the Surface Transportation Board has exclusive jurisdiction over claims involving railroad operations. *Id.* at 499. To the extent plaintiffs seek to use state common law to regulate the manner in which the defendant conducts operations at its switch yard, which in turn would result in an economic impact on the defendant, the state law has been preempted by the ICCTA which vests exclusive jurisdiction in the STB over such matters. *Id.* at 500–01. However, as to the claims based on the construction of the berm, the court stated:

> that it has subject matter jurisdiction to hear the Plaintiffs' state law nuisance and negligence claims that relate to the design and/or construction of the earthen berm by the Defendant and the alleged damages resulting therefrom.

*Id.* at 501.

The facts herein are easily distinguishable from those in *Rushing.* In *Rushing,* the pooling of rainwater was allegedly caused by the railroad's construction of an earthen berm designed to curtail noise emanating from the rail yard. Finding that the design and construction of the berm did not relate to the manner in which the railroad conducts its switching activities, the Court concluded that the claims relating to the design/erection of the earthen berm were not preempted by the ICCTA. *Id.*

In the case herein, Plaintiffs contend that the tracks themselves and their foundation "blocks natural drainage and it seeps under the railroad tracks without being directed and diffuses itself onto the property. . . ." Plaintiffs' Answer to Interrogatory No. 6. Plaintiffs also contend that the drainage on the crossings is not adequately maintained which leads to them being muddy or otherwise clogged up with materials at times. *Id.* Unlike was the case in *Rushing,* the drainage problem in the case *sub judice* is allegedly being caused by the construction and/or maintenance of the tracks and crossings themselves. Given the plain language of the ICCTA at section 10501(b)(2), this factual difference is significant and provides an important distinction between *Rushing* and the facts herein.

■ One final matter deserves comment. In their response, Plaintiffs argue that absent a showing that the regulation, or in this case, the common law remedies, will place a substantial burden on interstate commerce, there can be no preemption. Plaintiffs rely upon the savings provisions contained in the Federal Railway Safety Act ("FRSA"). *See* footnote 2 herein. Plaintiffs' reliance on the provisions of the FRSA, and more specifically, 49 U.S.C. § 20106, are misplaced. First, the ICCTA is a separate and distinct statute from the FRSA. Second, the common law remedies implicated in this case are not "related to railroad safety" for purposes are section 20106. *See Guckenberg, supra,* 178 F.Supp.2d at 959. Third, ICCTA preemption is not preconditioned upon either an effect on interstate commerce or the necessity of capital expenditures by the CSX. Given the plain language of the ICCTA, even if the Plaintiffs were able to satisfy the savings provisions of the FRSA, the express preemption set forth in 49 U.S.C. § 10501(b)(2) would still be controlling.

### Conclusion

An analysis of the plain language of the ICCTA as well as the published federal case law interpreting the ICCTA leads to

the conclusion that the Plaintiffs' common law nuisance claims are preempted.

Accordingly, **IT IS ORDERED** as follows:

(1) that defendant CSX's motion for summary judgment (Doc. # 53) be, and it is, hereby **GRANTED**;

(2) that third-party defendant AEP Kentucky Coal's motion for summary judgment (Doc. # 67) is **DENIED WITHOUT PREJUDICE**;

(3) Plaintiffs' complaint is **DISMISSED** and **STRICKEN** from the docket of the Court; and

(4) The final pretrial conference and trial dates are **VACATED**.

(5) This is a final and appealable Order.