**CEDARAPIDS, INC., Plaintiff,**

v.

**CHICAGO, CENTRAL & PACIFIC RAILROAD COMPANY D/B/A CANADIAN NATIONAL/ILLINOIS CENTRAL RAILROAD (CN/IC), Defendant.**

No. C02–0081.

United States District Court, N.D. Iowa, Cedar Rapids Division.

May 21, 2003.

James A Fletcher, Myles L Tobin, James D Helenhouse, Fletcher & Sippel, LLC,Chicago, IL, Edward J Krug, Krug & Beckelman, Cedar Rapids, IA for Defendant.

Paul Petersen, Mark A Roberts, Mark A Roberts, Morf, Simmons Perrine Albright Ellwood, Cedar Rapids, IA, for Defendant.

## OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS

READE, District Judge.

### I. INTRODUCTION

On October 13, 1995, plaintiff Cedarapids, Inc. ("Cedarapids") and defendant Chicago, Central & Pacific Railroad Company d/b/a Canadian National/Illinois Central Railroad ("CC & P") entered into a real property lease pursuant to which CC & P leased to Cedarapids property which included a railroad right-of-way across the property generally located between 17th Street Northeast and 20th Street Northeast in Cedar Rapids, Iowa (the "tracks"). The lease was for a term of one year with a provision that after the term expired, the lease became a month-to-month lease until terminated. In the lease, CC & P reserved to itself and its licensees numerous rights, including all railroad operating rights associated with the premises. The tracks are a portion of a line of railroad that runs from approximately milepost 86.4 near "C" Avenue in Cedar Rapids to approximately milepost 88.5 northeast of Cedar Rapids.

CC & P subsequently served notice on Cedarapids that CC & P intended to use the tracks for the storage and operation of rail cars. Cedarapids responded by filing suit in the Iowa District Court for Linn County seeking to enjoin CC & P from using such tracks and seeking rescission of the October 13, 1995 lease of the right-of-way and restitution for all amounts paid to CC & P thereunder. In support of its request for injunctive relief (Count I), Cedarapids alleges that CC & P has no right to use the tracks in question because CC & P's interest therein has been extinguished by its lack of use of the tracks under Iowa Code sections 327G.76 and 327G.77 and because CC & P's alleged abandonment of the tracks has resulted in the reversion to Cedarapids of all right, title and interest in such property as the owner of the adjoining property under Iowa Code Chapter 649. In support of its request for rescission of the lease and restitution for amounts paid thereunder (Count II), Cedarapids alleges that CC & P falsely represented to Cedarapids whether the land

would be used as live tracks and such misrepresentations were material to Cedarapids' decision to enter into the lease. Cedarapids asserts, in the alternative, that the parties were mutually mistaken with respect to their rights under the lease and this mistake entitles Cedarapids to rescission of the lease and restitution of the amounts paid thereunder.

On May 30, 2002, CC & P removed the action to this Court alleging that this Court has original jurisdiction of the action under 28 U.S.C. § 1331 because Cedarapids seeks in its Complaint an order requiring that CC & P abandon its line of railroad and, pursuant to 49 U.S.C. §§ 10501(b), 10902 and 10906, the issue of whether a carrier may abandon a line of railroad is within the exclusive jurisdiction of the Surface Transportation Board (the "STB"). CC & P asserts that federal law completely preempts Cedarapids' claims and Cedarapids' claims therefore arise under the Constitution, laws or treaties of the United States.

On June 6, 2002, CC & P filed a Motion to Dismiss Cedarapids' Complaint (docket no. 5) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Cedarapids resisted this Motion. On July 2, 2002, Cedarapids filed a Motion to Remand (docket no. 12) and CC & P resisted Cedarapids' Motion. On December 16, 2002, CC & P filed counterclaims against Cedarapids alleging that Cedarapids had breached the October 13, 1995 lease by failing to pay rent thereunder since September 2001 (Count I) and that Cedarapids had failed to pay license fees to CC & P pursuant to the terms of three different License Agreements between CC & P and Cedarapids for licenses to construct and maintain an 18 inch steel casing and one 15 inch sewer pipe running underneath certain property of CC & P located in Cedar Rapids, Iowa (Counts II, III and IV). Cedarapids filed a Motion to Dismiss CC & P's counterclaims on January 14, 2003 (docket no. 24) and CC & P resisted Cedarapids' Motion. Because the Court's consideration of Cedarapids' Motion to Remand may obviate the need for the Court to rule on CC & P's Motion to Dismiss and on Cedarapids' Motion to Dismiss CC & P's Counterclaim, the Court will first consider Cedarapids' Motion to Remand and will then consider the remaining two motions as necessary.

## II.  LEGAL ANALYSIS

### A.  Motion to Remand

Cedarapids moves to remand this case to the Iowa District Court for Linn County asserting that it was improperly removed because each of the claims set forth in Cedarapids' Complaint arises under Iowa law. Cedarapids argues that the standards for removal of a case from state court to federal court have not been met in this case because the Interstate Commerce Commission Termination Act of 1995, codified at 49 U.S.C. §§ 10101, et seq., (the "ICCTA") does not, by its terms, make this action removable to federal court. Cedarapids further contends that the complete preemption doctrine does not apply to Cedarapids' state law claims in this case.

In opposition to Cedarapids' Motion to Remand, CC & P asserts that removal is proper because the complete preemption doctrine applies. CC & P posits that, by enacting the ICCTA, Congress has so pervasively regulated the area of abandonment of railroad lines that state law claims involving abandonment, which CC & P argues is the nature of Cedarapids' state law claims in this case, necessarily invoke federal law. Cedarapids asserts, in response to this argument, that the tracks in question are spur tracks which are not governed by the abandonment provisions of the ICCTA.

Under 28 U.S.C. § 1441, which governs a federal court's removal jurisdiction, a federal court may exercise removal jurisdiction over "any civil action brought in the State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), or "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). Thus, where a district court does not have original jurisdiction because it lacks subject matter jurisdiction over a plaintiff's claims, removal is improper and the case must be remanded to state court in accordance with 28 U.S.C. § 1447(c). *International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 87, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir.1993). A district court has no discretion, however, to remand a claim that states a federal question. *Gaming Corp. of Am. v. Dorsey & Whitney,* 88 F.3d 536, 542 (8th Cir.1996). The party seeking removal and opposing remand has the burden of establishing subject matter jurisdiction, *see In re Business Men's Assur. Co. of Am.,* 992 F.2d 181, 183 (8th Cir.1993), and the court's removal jurisdiction must be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Mulcahey v. Columbia Organic Chem. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994).

▮▮▮ The issue of whether a federal court has removal jurisdiction over claims originally filed in state court must be determined from the face of the plaintiff's well-pleaded complaint as it stands at the time of removal. *M. Nahas & Co. v. First Nat'l Bank of Hot Springs,* 930 F.2d 608, 611 (8th Cir.1991). Under the "well-pleaded complaint" rule, a federal cause of action must be stated on the face of a plaintiff's complaint before a defendant may

remove the action based on federal question jurisdiction. *Gaming Corp. of Am.,* 88 F.3d at 542–43 (citations omitted). "A federal defense, including the defense that one or more claims are preempted by federal law, does not give the defendant the right to remove to federal court." *Id.* However, "a plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists. In certain instances, the preemptive force of a federal statute is so complete that it transforms complaints styled as ordinary common-law claims into ones stating a federal claim." *Peters v. Union Pac. R.R. Co.,* 80 F.3d 257, 260 (8th Cir.1996) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). "Once an area of state law has been completely preempted, any claim based on that preempted state law claim is considered from its inception to raise a federal claim and therefore arises under federal law." *Id.* (citing *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238, 1242 (8th Cir.1995)). *See also, Deford v. Soo Line R.R.,* 867 F.2d 1080, 1084 (8th Cir.) (holding that complete preemption "prohibits a plaintiff from defeating removal by failing to plead necessary federal questions in complaint"), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

▮▮▮ Each of the claims set forth on the face of Cedarapids' Complaint is premised entirely on state law. Cedarapids seeks to enjoin CC & P from using the tracks in question pursuant to Cedarapids' rights under the lease to the property over which the tracks traverse and to quiet title to the land on which the tracks are located under Iowa statutory law. Additionally, Cedarapids seeks recission of the lease and restitution for all amounts paid thereunder, also under Iowa law. Thus, Cedarapids' "well-pleaded" complaint, on its face, in-

cludes only state law claims. This Court must therefore remand this case to state court unless the Court finds that the doctrine of complete preemption applies to the ICCTA and that the ICCTA preempts Cedarapids' state law claims in this case.

An examination of the case law interpreting the Interstate Commerce Act (the "ICA"), the predecessor to the ICCTA,[1] is instructive in this regard. In *Deford v. Soo Line Railroad Company*, 867 F.2d 1080 (8th Cir.1989), the Eighth Circuit Court of Appeals examined the issue of whether the complete preemption doctrine applies to the ICA for purposes of federal subject matter jurisdiction. The court opined that the "fundamental question [in making such determination] is whether the ... ICA so pervasively occup[ies] the field of railroad governance that a competing state law claim necessarily invokes federal law." *Id.* at 1084–85. The court determined that its analysis of this issue must "focus on the nature and purpose of the ICA illustrated by the language of the statute and recent case law, to determine if the complete preemption doctrine applies to the ICA." In analyzing the nature and purpose of the ICA, the court found:

> The ICA's primary purposes are to ensure fair shipping rates, safety, fair wages and working conditions and efficiency in transportation, and to discourage monopolistic practices and labor strikes. *See* 49 U.S.C. §§ 10101, 10101a. To promote these goals, the ICA generally requires that before a railroad acquires or abandons a railway line, the rail carriers involved must obtain approval by the [Interstate Commerce Commission ("ICC")], which may in-

> clude the imposition of labor protective agreements on the railroad. 49 U.S.C. § 10901.... The broad grant of power given the ICC in governing railway transactions is illustrated on the face of the ICA. The exclusivity of the ICC's authority is expressly set out in section 10501(d) which states: "The jurisdiction of the Commission over transportation by rail carriers, and the remedies provided in this title with respect to the rates, classifications, rules and practices of such carriers is exclusive."

*Id.* at 1088. The court determined that Congress' grant of exclusive and broad jurisdiction to the ICC over transactions involving railways under the ICA evinced an intent by Congress to pervasively occupy the field with respect to these transactions. *Id.* It therefore held that the doctrine of complete preemption applied to the ICA and preempted plaintiff's state law claims because to allow the plaintiff to bring such state law claims would "be to disregard the ICC's authority and expertise in this matter." *Id.* at 1089. The court found significant support for its decision that the complete preemption doctrine applies to the ICA in the United States Supreme Court's decision in *Chicago N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). In the *Kalo Brick & Tile* decision, the Supreme Court ruled on the extent of the preemptive effect of section 1(18) of the ICA, the predecessor to section 10901, as it applied to railroad abandonment. The *Deford* court observed:

> In finding that the ICA preempted the state law claims, the [Supreme] Court

---

**1.** In enacting the ICCTA, Congress amended the ICA. The amendment included an abolishment the Interstate Commerce Commission and the repeal of many of the regulatory activities that once were performed by the Commission. H.R.Rep. No. 311, 104th Cong., 1st Sess. 82–83 (1995), *reprinted in*

1995 U.S.C.C.A.N. 793–794. In place of the Interstate Commerce Commission, Congress established the Surface Transportation Board which assumed many of the functions previously performed by the Interstate Commerce Commission.

reasoned that when Congress has chosen to legislate pursuant to its constitutional powers, a court must find state law preempted by federal regulation when the state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ... The Court further stated that the ICA "is among the most pervasive and comprehensive of federal regulatory schemes" and that "compliance with the intent of Congress cannot be avoided by mere artful pleading" of state law claims "to gain * * * the relief * * * denied by the Commission." ... Also, the Court emphasized the *exclusive* nature of the ICC's jurisdiction and stated that "[t]he breadth of the Commission's statutory discretion suggests a congressional intent to limit judicial interferences with the agency's work."

*Id.* at 1089 (quoting *Kalo Brick & Tile Co.*, 450 U.S. at 317–24, 101 S.Ct. 1124) (internal citations omitted) (emphasis in original).

To determine whether the doctrine of complete preemption applies to the ICCTA and preempts Cedarapids' state law claims in this case, then, the Court must examine whether the ICCTA so pervasively occupies the field of railroad governance that a competing state law claim necessarily invokes federal law. The Court must therefore analyze the nature and purpose of the ICCTA as illustrated by the language of the statute and recent case law to decide whether the complete preemption doctrine applies to the ICCTA. The Court must then determine whether Cedarapids' state law claims compete with or stand as an obstacle to purpose of the ICCTA.

The Court first notes that Congress and the courts have long recognized the need for federal regulation of railroad operations and that Congress' authority to regulate the railroads under the Commerce Clause is well established. *City of Auburn v. U.S. Government*, 154 F.3d 1025, 1029 (9th Cir.1998). Moreover, "the Supreme Court repeatedly has recognized the preclusive effect of federal legislation in this area." *Id.* (citing *Colorado v. United States*, 271 U.S. 153, 165–66, 46 S.Ct. 452, 70 L.Ed. 878 (1926) (ICC abandonment authority is plenary and exclusive); *Transit Comm'n v. United·States*, 289 U.S. 121, 127–28, 53 S.Ct. 536, 77 L.Ed. 1075 (1933) (ICC authority over interstate rail construction is exclusive); *City of Chicago v. Atchison, T. & S.F. Ry.*, 357 U.S. 77, 88–89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958) (local authorities have no power to regulate interstate rail passengers)). The Supreme Court also has recognized the ICA as "among the most pervasive and comprehensive of federal regulatory schemes." *Id.* (citing *Kalo Brick & Tile Co.*, 450 U.S. at 318, 101 S.Ct. 1124).

In enacting the ICCTA, Congress sought to deregulate the railroad industry. Recognizing that the over regulation of the surface transportation industries in this country had led to financial problems in the rail industry in particular, Congress intended for the ICCTA·to significantly reduce the regulation of such industries. *See* S.Rep. No. 176, 104th Cong. 1st Sess. 3 (1995). Thus, Congress sought to federalize many aspects of railway regulation that previously had been reserved for the states in an effort to ensure the success of Congress' attempt to deregulate and thereby revitalize the industry. *See* H.R.Rep. No. 104–311 at 95–96, *reprinted in*· 1995 U.S.C.C.A.N. 793, 807–08. The legislative history regarding the amendment to the jurisdictional section of the ICCTA provides:

> ·[Section 10501 of the ICCTA] replaces the railroad portion of former [s]ection 10501. Conforming changes are made to reflect the direct and complete pre-emption of State economic regulation of railroads. The changes

include extending exclusive Federal jurisdiction to matters relating to spur, industrial, team, switching or side tracks formerly reserved for State jurisdiction under former section 10907. The former disclaimer regarding residual State police powers is eliminated as unnecessary, in view of the Federal policy of occupying the entire field of economic regulation of the interstate rail transportation system. Although States retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive. Any other construction would undermine the uniformity of Federal standards and risk the balkanization and subversion of the Federal scheme of minimal regulation for this intrinsically interstate form of transportation.

*Id.*

In furtherance of this purpose, the jurisdictional section of the ICCTA grants to the STB exclusive jurisdiction over nearly all matters of rail regulation. *See CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n,* 944 F.Supp. 1573, 1583 (N.D.Ga. 1996). More specifically, section 10501(b) grants to the STB *exclusive* jurisdiction over:

> (1) transportation by rail carriers and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, facilities of such carriers; and
> (2) the construction, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located or intended to be located, entirely in one state....

The term "transportation" is broadly defined to include:

> a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and ... services related to that movement including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property.

*See* 49 U.S.C. § 10102(9)(A) and (B). Similarly, the term "rail carrier" means "a person providing common carrier railroad transportation for compensation but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation." *See* 49 U.S.C. § 10102(5). Thus, the terms of the jurisdictional provision indicate that Congress intended for a broad grant of jurisdiction to the STB over railroad transportation and rail carriers.

Moreover, the ICCTA contains an express preemption clause which provides that:

> Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b)(2). As the court in *CSX Transportation* noted, "it is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." 944 F.Supp. at 1581. The *CSX Transportation* court found, more specifically, that this preemption provision evidences Congress' specific intent to preempt state regulatory authority of wholly intrastate spur and side tracks. *Id.* Whereas Congress explicitly excluded wholly intrastate spur and side tracks from federal jurisdiction in the

Staggers Rail Act, the predecessor to the ICCTA, Congress explicitly included such tracks within the exclusive jurisdiction of the STB under the ICCTA. *Id.*

The Court's review of the nature and purpose of the ICCTA, as evidenced by both the legislative history and the plain language of the statute, leads the Court to conclude that, in enacting the ICCTA, Congress intended to occupy completely the field of state economic regulation of railroads. The Court also finds that the ICCTA preempts state regulation of the abandonment of lines of railroad. The ICCTA's grant of exclusive jurisdiction to the STB over the abandonment of tracks and its expansion of the types of tracks within this exclusive jurisdiction to include wholly intrastate spur and industrial tracks indicates that Congress intended for the abandonment of all types of tracks to be under the STB's jurisdiction. This comports with Congress' stated desire of deregulation of the railroad industry by ensuring that states do not impose regulations which conflict with or undermine those set forth in the ICCTA and imposed by the STB with respect to the abandonment of tracks.

■ Cedarapids asserts that the tracks in question are spur tracks and therefore its state law claims regarding the tracks are not preempted by the ICCTA because the STB is without authority over the abandonment of such tracks under section 10906 of the ICCTA. The Court disagrees. The ICCTA by its terms makes it clear that the STB has *exclusive jurisdiction* over the abandonment of tracks, including wholly intrastate spur and side tracks. Chapter 109 of the ICCTA, entitled "Licensing," governs the process of STB approval over a railway carrier's decision to add to or to extend its rail lines, to acquire rail lines or to abandon or discontinue use of its rail lines. Section 10906 of the ICCTA, entitled "Exception" provides,

in pertinent part, that "[t]he Board does not have authority under this chapter over construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching or side tracks." The Court does not interpret this provision of the statute to mean that the types of tracks mentioned therein are outside the jurisdiction of the STB. Instead, this provision simply provides that STB approval is not required prior to the construction, acquisition, operation, abandonment or discontinuance of these types of tracks. Thus, the Court disagrees with Cedarapids' contention that the classification of the tracks in question as spur tracks takes them outside the jurisdiction of the STB for purposes of federal subject matter jurisdiction analysis. *See United Transp. Union—Illinois Legis. Bd. v. Surface Transp. Bd.,* 183 F.3d 606, 612 (7th Cir. 1999) (noting that "[t]he § 10906 exception states that the [STB] 'does not have authority' over 'construction, acquisition, operation, abandonment, or discontinuance of spur ... track,' but this does not mean that the [STB] lacks jurisdiction over such transactions. That would flatly contradict the unambiguous statutory language providing that the Board has "exclusive" jurisdiction over the 'construction, acquisition, operation, abandonment or discontinuance' of spur track"); *see also Grantwood Village v. Missouri Pac. R.R. Co.,* 95 F.3d 654, 657 (8th Cir.1996) (affirming district court's refusal to remand case on grounds that federal subject matter jurisdiction existed because the ICC has exclusive and plenary authority to determine whether a rail line has been abandoned), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 216 (1997); *Friends of Richards–Gebaur Airport v. Federal Aviation Admin.,* 251 F.3d 1178, 1193 (8th Cir.2001) (recognizing that "[w]hether the construction of railroad track is considered a railroad line subject to the jurisdiction of the [STB] [under 49 U.S.C. § 10501(b) ] ... or an

industrial, team, switching, or side track that is not within the STB's jurisdiction under [49 U.S.C. § 10906] ... is a matter to be considered in the first instance by the STB").

The Court's conclusion with respect to the preemptive effect of the ICCTA finds support in the case law addressing the issue. *See City of Auburn*, 154 F.3d at 1031 (holding that "congressional intent to preempt ... state and local [environmental] regulation of rail lines is explicit in the plain language of the ICCTA and the statutory framework surrounding it"). *See also, Columbiana County Port. Auth. v. Boardman Township Park Dist.*, 154 F.Supp.2d 1165, 1180 (N.D.Ohio 2001) (holding that the "ICCTA evidences the intent of Congress to preempt the field in which state law previously operated with respect to railroads. In particular, Congress granted the STB exclusive jurisdiction over all matters of rail transportation, including intrastate railroad tracks," and that "[s]tate law is ... preempted to the extent that it conflicts with federal law by standing 'as an obstacle to the accomplishment and execution of the full objectives of Congress'"); *Rushing v. Kansas City Southern Railway Co.*, 194 F.Supp.2d 493, 498 (S.D.Miss.2001) (holding that "the clear and manifest purpose of Congress when it enacted the ICCTA was to place certain areas of railroad regulation within the exclusive jurisdiction of the STB and to preempt remedies otherwise provided under federal and state law" and that plaintiff's claims under state negligence and nuisance laws which "would impose regulations on the [railway carrier] regarding the manner in which it operates its switch yard thereby potentially interfering

with interstate rail operations" and "would impose an impermissible economic regulation on the railroad industry" were therefore preempted by the ICCTA); *Burlington Northern Santa Fe Corp. v. Anderson*, 959 F.Supp. 1288, 1295 (D.Mont.1997) (reading the ICCTA broadly to find preemption of state regulation of railroad agencies and finding that the "[l]egislative history supports this analysis, as Congress noted that the 'Federal scheme of economic regulation and deregulation is intended to address and encompass *all* such regulation and to be completely exclusive'") (citations omitted) (emphasis in original); *CSX Transp., Inc.*, 944 F.Supp. at 1585 ("[T]he language of the [ICCTA] expresses a clear intent on the part of Congress to preempt state regulatory authority over railroad agency closings. The policy underlying the Act, as well as its purpose and legislative history support this conclusion. That the STB ... ha[s] reached the same conclusion as to this issue reinforces the Court's confidence in its interpretation of the [ICCTA] to preempt state regulatory authority over agency closings.").

■ Accordingly, to the extent that Cedarapids' state law claims seek to force CC & P to abandon the track in question, such claims are preempted by the ICCTA. An examination of Cedarapids' state law claims in this case reveals that, in Count I of its Complaint, Cedarapids seeks, in essence, to accomplish an abandonment by CC & P of the tracks in question. Cedarapids seeks to enforce its rights under the lease into which it entered with CC & P in 1995 by enjoining CC & P from using the tracks, alleging that CC & P's interest in the tracks has been extinguished under Iowa Code sections 327G.76 [2] and 327G.77 [3]

**2.** Iowa Code Section 327G.76, entitled "Time of Reversion," provides the following:

Railroad property rights which are extinguished upon cessation of service by the railroad divest when the railway finance authority or the railroad, having obtained

authority to abandon the rail line, removes the track materials to the right-of-way. If the railway finance authority does not acquire the line and the railway company does not remove the track materials, the property rights which are extinguished

. Sections 327G.76 and 327G.77 provide for a reversion of a railroad right-of-way to the landowners of the property adjacent to the right of way after abandonment by the railroad. Moreover, chapter 649 of the Iowa Code governs actions to quiet title under Iowa law. Thus, Cedarapids' success on the state law claims included in Count I of its Complaint necessarily involves a finding that the tracks at issue have been abandoned by CC & P and that CC & P no longer has any right to use the tracks. In light of the foregoing analysis of the preemptive effect of the ICCTA, the Court finds that the claims set forth in Count I of Cedarapids' Complaint are preempted by the ICCTA. The state law claims set forth in Count II of Cedarapids' Complaint do not turn on whether CC & P is deemed to have abandoned the tracks in question. Rather, the claims set forth in Count II involve only the lease of the land on which the tracks are located and Cedarapids' rights thereunder. Thus, the claims set forth in Count II of Cedarapids' Complaint are not preempted by the ICCTA. The Court nevertheless has jurisdiction over these claims under 28 U.S.C. § 1367 because they form part of the same case or controversy as those claims set forth in Count I of Cedarapids' Complaint.

■ In light of the foregoing, the Court concludes that this case was properly removed because federal subject matter jurisdiction for purposes of removal is present under the complete preemption doctrine.

### B. Motion to Dismiss

■ CC & P moves to dismiss Count I of Cedarapids' complaint under Federal Rule of Civil Procedure 12(b)(1) alleging that this Court lacks subject matter over the claims set forth in Count I of Cedarapids' Complaint because the STB has exclusive jurisdiction over these claims. CC & P moves to dismiss Count II of Cedarapids' Complaint under Federal Rule of Civil Procedure 12(b)(6) alleging that Count II of Cedarapids' Complaint fails to state a claim for which relief can be granted.

The plaintiff bears the burden of establishing jurisdictional facts when faced with a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *V S Limited Partnership v. Department of Housing and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir.2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir.1989)). When ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court has the power to decide issues of disputed fact. *Godfrey v. Pulitzer Publishing Co.*, 161 F.3d 1137, 1140 (8th Cir.1998) (citing *Osborn v. United States*, 918 F.2d 724 (8th Cir.1990)). "Jurisdictional issues, whether they involve ques-

upon cessation of service by the railroad divest one year after the railway obtains the final authorization necessary from the proper authority to remove the track materials.

**3.** Iowa Code Section 327G.77, entitled "Reversion of railroad right-of-way," provides, in pertinent part:

1. If a railroad easement is extinguished under section 327G.76, the property shall pass to the owners of the adjacent property at the time of abandonment. If there are different owners on either side, each owner will take to the center of the right-of-way.

2. An adjoining property owner may perfect title under subsection 1 by filing an affidavit of ownership with the county recorder. The affidavit shall include the name of the adjoining property owner, a description of the property, the present name of the railroad, the jurisdiction, the docket number and the date of the order authorizing the railroad to terminate service, and the approximate date the materials on the right-of-way were removed.

tions of law or fact, are for the court to decide." *Id.* (quoting *Osborn,* 918 F.2d at 729) (internal quotations omitted).

In support of its Motion to Dismiss Count I of Cedarapids' Complaint under Rule 12(b)(1), CC & P asserts that this Court lacks subject matter jurisdiction over such claim because it necessarily involves a determination that CC & P abandoned the tracks in question. CC & P contends that the STB has exclusive jurisdiction to consider abandonment issues. Cedarapids does not dispute the fact that its state law claims involve a determination that the tracks in question have been abandoned by CC & P. Rather, Cedarapids asserts that the tracks in question are spur track which are excepted from STB authority with respect to the issue of abandonment under section 10906 of the ICCTA. Cedarapids further contends that this Court has jurisdiction to make such determination.

In light of the Court's analysis of the preemptive effect of the ICCTA, as set forth above, the Court disagrees with Cedarapids' assertions. CC & P has indicated that the tracks in question have in the past been considered a line of railroad. Cedarapids does not dispute this fact, but rather argues that the tracks should now be classified as spur track. As the Court previously indicated, general federal subject matter jurisdiction exists in this case under the complete preemption doctrine. However, the Court's interpretation of the preemptive effect of the ICCTA leads to the conclusion that the issues of the classification and the abandonment of the tracks in question are within the exclusive jurisdiction of the STB. The Court therefore finds that dismissal of the claims set forth in Count I of Cedarapids' Complaint is proper in order to allow the STB to exer-

cise its jurisdiction. *See Grantwood Village v. Missouri Pac. R.R. Co.,* 95 F.3d 654, 657 (8th Cir.1996) (affirming district court's refusal to remand case on grounds that federal subject matter jurisdiction existed because the ICC has exclusive and plenary authority to determine whether a rail line has been abandoned and affirming district court's conclusion that, although federal subject matter jurisdiction existed, the court did not have jurisdiction to review an ICC decision under the Hobbs Act which reserves such review for the circuit courts), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 216 (1997). The Court therefore grants CC & P's Motion to Dismiss Count I of Cedarapids' Complaint.

■ The Court's dismissal of the claims set forth in Count I of Cedarapids' Complaint results in the dismissal of the only claim over which this Court has original jurisdiction. Under 28 U.S.C. § 1367(c),[4] the Court, in its discretion may decline to exercise jurisdiction over the supplemental claims involved in this case. Because Count II of Cedarapids' Complaint and CC & P's counterclaims involve issues of state law which the Court believes are best addressed in state court, the Court hereby remands such claims to state court for adjudication. *See Lindsey v. Dillards, Inc.,* 306 F.3d 596 (8th Cir.2002) (holding that "upon dismissal of the federal claim, the district court did not err in remanding the supplemental claims to the state court").

## III. CONCLUSION

In light of the foregoing, Cedarapids' Motion to Remand (docket no. 12) is GRANTED IN PART and DENIED IN PART. CC & P's Motion to Dismiss Count

---

4. 28 U.S.C. § 1367(c) provides, in pertinent part, that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—the district court has dismissed all claims over which it has original jurisdiction."

I of Cedarapids' Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) (docket no. 5) is GRANTED and Count I of Cedarapids' Complaint is dismissed without prejudice. Count II of Cedarapids' Complaint and CC & P's Counterclaims are hereby remanded to the District Court in Linn County, Iowa. Accordingly, CC & P's Motion to Dismiss Count II of Cedarapids' Complaint under Rule 12(b)(6) (docket no. 5) and Cedarapids' Motion to Dismiss CC & P's Counterclaims (docket no. 24) are DENIED as moot.

**IT IS SO ORDERED.**