334 F.Supp.2d 1151 (2004)
Sarah ILLIG, et al., Plaintiffs,
v.
UNION ELECTRIC COMPANY, Defendant.
No. 4:03 CV 135 DDN.
United States District Court, E.D. Missouri, Eastern Division.
August 13, 2004.
Mark F. Hearne, II, Amy E. Marchant, Lathrop and Gage, St. Louis, MO, for Plaintiffs.
Daniel C. Nelson, Armstrong Teasdale, LLP., St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
NOCE, United States Magistrate Judge.
This matter is before the court on the motion of plaintiffs, Sarah Illig and her husband Gale Illig, individually and for similarly situated property owners, to remand this case to state court. (Doc. 57.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

*1152 I. BACKGROUND
On December 23, 2002, plaintiffs filed this action in the Circuit Court of the City of St. Louis, alleging the following. They are the fee owners of property that is currently burdened by utility lines, poles, and appurtenances placed there by defendant Union Electric Company (UE). The Missouri Pacific Railroad (MoPac) formerly operated what was known as the Carondelet Branch of the railroad, constructed in 1872, which traversed plaintiffs' property. In 1972, MoPac and UE entered into "Wire Line License" agreements under which UE obtained permission from MoPac to build its utilities on plaintiffs' property and along Carondelet Branch, upon payment of initial and annual fees. (Doc. 1.)
In 1992, MoPac abandoned its right-of-way, which plaintiffs allege, under Missouri law, would have enabled them to enjoy their property free of any easement held by the railroad or anyone claiming a right legitimately derived from the railroad. This was curtailed however, by the National Trails System Act (Trails Act), as amended, 16 U.S.C. § 1241 et. seq., 1247(d), which forestalled the operation of Missouri law and provided for interim use of any established railroad right-of-way as a public recreational trail, subject to reactivation as a railroad. MoPac conveyed all of its rights to the Carondelet Branch to Gateway Trailnet (Trailnet) for interim trail use, subject to the provisions in the Trails Act. UE now compensates Trailnet for its use of the right-of-way. Plaintiffs believe that UE's claim, if any, to install and use power lines on their property was derived from MoPac's easement prior to its abandonment thereof and was derived from the Trails Act after MoPac's abandonment of the easement. (Id.)
Plaintiffs have also sought compensation from the federal government for this taking of their property interest to the extent that the Trails Act operated to forestall their right to the use and enjoyment of their property. This claim is currently pending in the United States Court of Federal Claims. (Id.)
Defendant filed a timely notice of removal under 28 U.S.C. § 1441(b), asserting that this case presents a federal question because it is premised upon the Trails Act. It alleged that the court would have to interpret rights granted under the Trails Act and implement Federal Regulations. It further claimed that this action involves determination of rights which is in the exclusive jurisdiction of the Surface Transportation Board (STB). (Id.)
In their motion to remand, filed May 21, 2004, plaintiffs assert that they are seeking rights and remedies granted solely pursuant to Missouri law, i.e., inverse condemnation or ejectment. They claim that this action seeks compensation for UE's use of their property beyond any rights held by UE pursuant to any license that was within MoPac's authority to grant. (Doc. 58.)
Plaintiffs distinguish this action from their pending action against the federal government because the compensation for the taking that occurred by operation of the Trails Act may not include the value attributed to UE's use of their property as such may have been in whole or part beyond those rights held by MoPac. They argue that the Court of Federal Claims has already determined, with regard to the same property at issue, that any rights held by Trailnet, UE or the fee owners is determined by Missouri law. Illig v. United States, 58 Fed.Cl. 619, 630-32 (2003). The court reasoned that Trailnet has the same relationship with the licensees as previously enjoyed by MoPac  and just as MoPac's right-of-way was exclusive under Missouri law  so too was Trailnet's. Id. at 633. Based on this, the court determined:
*1153 It thus appears under Missouri law a railroad company holding an easement for railroad purposes across a piece of property held in fee by another has the right to grant a license to a utility company so long as the utility has some connection to a railroad purpose ... to the extent that the utility licenses are for a legitimate railroad purpose, Trailnet has the authority to contract with such licensees ... to the extent that any license does not have a legitimate railroad purpose under Missouri law, MoPac never had any authority to grant such licenses and, consequently neither does Trailnet. Such licenses therefore may not be considered when computing the value of the property taken from plaintiff by operation of the Trails Act. As against such users, plaintiffs would have to bring any claims in state court.
Id. at 634 (footnote omitted). Plaintiffs argue that the only issues present in this case are whether the grant of licenses to UE was within MoPac's authority and whether, under Missouri law, they are entitled to compensation from UE for the continued use of their property. (Doc. 58.)
Plaintiffs further argue in their motion to remand that, so long as they are asserting only Missouri state law, i.e., inverse condemnation or ejectment, the fact that certain issues might involve federal law does not allow federal courts to assume jurisdiction. They argue that the only federal issue that touches this lawsuit is whether the Trails Act constituted a taking by the federal government, but that in this action they are not seeking compensation for the taking by the government. Moreover, they note that the government is not a party to this action. (Id.)
According to plaintiffs, this case must be remanded because the issues are not preempted by federal law. They rely on Grantwood Vill. v. Mo. Pac. R.R. Co., 95 F.3d 654, 657-58 (8th Cir.1996), cert. denied, 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 216 (1997) (federal law and regulations exist that preempt questions of railroad abandonment of the Carondelet Branch), to argue that since this action does not involve questions of abandonment or any interpretation of an Interstate Commerce Commission (ICC), which is now the STB, order regarding abandonment it is not preempted. Citing Cedarapids, Inc. v. Chi., Cent. & Pac. R.R. Co., 265 F.Supp.2d 1005, 1015-17 (N.D.Iowa 2003), they argue that, even if there is preemption, the state law issues should be remanded. (Doc. 58.)
Defendant responds that plaintiffs' motion explicitly invoked federal law when it stated that UE's claim after MoPac abandoned the easement are derived from the Trails Act. It contends that this action is properly before the court because the central issue is UE's rights under the Trails Act, a federal statute. (Doc. 63.)
Defendant also cites Grantwood, but interprets it to mean that any disputes relating to the interests on the Carondelet Branch raises a federal question. (Doc. 63.)
Further, defendant argues that the interlocutory orders entered by the Court of Federal Claims in Illig are not binding on them. It asserts that claim or issue preclusion is not present because it was not a party in those proceedings or in privity with the United States, and no final judgment has been entered on those proceedings. (Doc. 63.)
Plaintiffs respond that the Trails Act deals with interim recreational trail use. They claim that references to federal law in their petition were merely to provide the factual background or assert a defense to what defendant might argue, neither of which can provide a basis for federal jurisdiction. (Doc. 68.)
*1154 Plaintiffs reassert that Grantwood only applies to questions of abandonment or interpretation of ICC or STB orders regarding abandonment. They claim that defendant reads it too broadly. As for Illig, plaintiffs contend that it was referenced for its cogent analysis of Missouri law, establishing that the authority of the railroad to grant licenses or otherwise give permission to use the right-of-way is based solely on Missouri law. (Doc.68.)

II. DISCUSSION
Under 28 U.S.C. § 1441, a federal court has authority to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over claims or rights "arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b). "The presence or absence of federal-question jurisdiction is governed by the `well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc., v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).
Although, plaintiffs state on the face of their complaint that they believe that UE's claim to use their property was derived from the Trails Act after MoPac's abandonment, they feel the attention should be drawn to the words: "believe that UE's claim." They contend that the language indicates that the complaint was merely anticipating what defendant's arguments might be, and thus, cannot serve to establish federal jurisdiction. See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 153-54, 29 S.Ct. 42, 53 L.Ed. 126 (1908).
Plaintiffs' arguments are belied by the Supreme Court holding that "a case `arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Plaintiffs are seeking inverse condemnation or in the alternative ejectment, but this turns on whether defendant has a right to have its utility lines on their property. "Even though state law creates [a cause of action], its case might still `arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Id. at 13, 103 S.Ct. 2841.
Before plaintiffs can prevail on their state law claims, federal questions such as Trailnet's rights under the Trails Act and whether those rights include licensing to defendant must be answered. This court has original jurisdiction to hear and resolve those federal issues.
Since it is already decided that this action presents federal questions, the court need not determine whether there is preemption. Instead the court will turn now to whether the doctrine of res judicata applies to the interlocutory orders in Illig.
"`Res judicata' is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second action on that or any part of it) and ... (2) issue preclusion, long called `collateral estoppel' (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim"). Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir.2003) (quoting Baker by Thomas v. General Mtrs. Corp., 522 U.S. 222, 233 n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998)).
*1155 Res judicata requires the element of a final judgment which is lacking in Illig. "To be a final order or judgment, there must be `some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned is the end of the case.'" Goodwin v. United States, 67 F.3d 149, 151 (8th Cir.1995). As long as Illig is still pending in the United States Court of Federal Claims, its rulings are interlocutory and not the end of the case. An interlocutory order in "a pending trial may be no more than a procedural step in a particular case and in such event the effect of the decision does not extend beyond that case." McDonnell v. United States, 455 F.2d 91, 97 (8th Cir.1972). Furthermore, "the doctrine of res judicata does not apply to an interlocutory order." Pennsylvania Tpk. Comm'n. v. McGinnes, 169 F.Supp. 580, 582 (E.D.Pa.1958), rev'd on other grounds, 268 F.2d 65 (3rd Cir.), cert. denied, 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959).
Plaintiffs contend that Illig is cited because it puts this action in a state law context because of the court's determination that the authority of a railroad to grant licenses is based solely on Missouri law. However, the conclusions made in Illig have no preclusive effect on the present action.
Accordingly,
IT IS HEREBY ORDERED that the motion of plaintiffs to remand this case to the state court (Doc. 57) is denied.