JOURNAL ENTRY and OPINION
{¶ 1} This is an appeal filed by several Berea homeowners from an order granting appellee CSX Transportation Inc.'s ("CSX") motion to dismiss their tort claims for damages caused by excessive railway vibrations. They argue the trial court erred in determining that their claims were preempted by federal law. We affirm. The apposite facts follow.
 {¶ 2} In 1996, CSX and Norfolk Southern ("NS") sought permission from the Surface Transportation Board ("STB") to acquire the assets of Conrail Rail Corporation ("Conrail") which operated approximately 10,500 miles of railroad in the Northeast and Midwest, with the hub of its network located in and about Cleveland.
 {¶ 3} Before approving the acquisition, the Section of Environmental Analysis ("SEA") prepared an Environmental Impact Survey("EIS"), which included site visits to affected communities, a review of public comments and consulted with federal, state and local agencies.[1] SEA focused on potential environmental impacts resulting from changes in activity levels on existing lines and rail facilities.
 {¶ 4} The EIS also examined the Ohio portion of the Conrail acquisition, which included lines which operated through the city of Berea on two main routes: (1) a line running northeast-southwest between Cleveland and Greenwich, Ohio, and (2) a line running eastwest between Cleveland and Vermillion, Ohio. Shortly after the acquisition of Conrail, the Cleveland-Greenwich line was allocated to CSX, with a resulting effect of increased traffic along the line.[2]
 {¶ 5} In approving the transaction, and in line with the suggested reports of the EIS, the STB authorized both CSX and NS to enter into negotiated agreements with local governments to address any environmental impacts. CSX entered into one such an agreement with the City of Berea which required CSX to cooperate in the construction of a grade separation at Bagley Road, and resulted in the relocation of the CSX crossing approximately 100 feet to the northwest. The agreement additionally required the construction of a berm at the cite of the prior railroad tracks to deflect noise from the homes on the south side of the line. In July of 1998, the STB approved the acquisition, and CSX adn NS began modifying and operating the lines.
 {¶ 6} After experiencing an increase in the line traffic behind her house despite any remedial measures, in August of 2001, Christine Cannon filed a complaint against CSX alleging that her property on Abbyshire Drive had been harmed by the, "noise, vibrations, particles and emissions" caused by the rail lines owned and operated by CSX, and asserted claims of trespass, private nuisance and negligence.
 {¶ 7} CSX moved to transfer the case to the United States District Court for the Northern District of Ohio, claiming that under the Interstate Commerce Commission Termination Act ("ICCTA"), the Surface Transportation Board ("STB") had exclusive jurisdiction over the claims. The federal court, however, remanded the case back to the Cuyahoga County Common Pleas Court finding that: (1) Ms. Cannon's complaint did not raise a federal question, and (2) that the amount in controversy did not meet the $75,000 jurisdictional amount for diversity of citizenship.
 {¶ 8} After the remand and in February of 2003, an amended complaint was filed naming six of Cannon's Abbyshire Drive neighbors and two additional residents on North Rocky River Drive. CSX then filed a motion to dismiss or in the alternative, motion for summary judgment contending that the ICCTA preempted the common law nuisance and negligence claims, and, shortly before trial, filed a second notice of removal to federal court.
 {¶ 9} Again, the case was remanded back to the trial court on the grounds that no federal claim existed, and instructions that the merits of CSX's preemption defense be decided in state court. Upon remand, CSX moved to dismiss for lack of subject matter jurisdiction which was then granted by Visiting Judge James Porter. It is from this order that Cannon appeals in a single assignment of error attached to the appendix of this opinion.
 {¶ 10} In dismissing the case for lack of subject matter jurisdiction, the journal entry states:
{¶ 11} Defdt CSX's renewed motion to dismiss for lack ofsubject matter jurisdiction is granted pursuant to Civ. R.12(B)(1) and 12(H)(3). The action is dismissed without prejudice.The Surface Transportation Bd. has exclusive jurisdiction ofrailroad operations. This Ct. Lacks jurisdiction to considerpltff's claims re same. 49 U.S.C. sect. 1051(b). Pltffs to bearcosts.
 {¶ 12} We review a motion to dismiss de novo,[3] and note that a motion to dismiss based on a lack of subject matter jurisdiction does not relate to the rights of the parties; rather, it refers to the power of a court to hear and decide a case on the merits.[4]
 {¶ 13} At issue in this case are two federal statutes, 49 U.S.C. sect. 10501(b) of the ICCTA, and 49 U.S.C. 20106, the preemption provision of the FRSA. Under49 U.S.C. Section 10501(b) it states in relevant part:
{¶ 14} (b) The jurisdiction of the Board over — (1)transportation by rail carriers, and the remedies provided inthis part [49 USCS 10101 et seq.] with respect to rates,classifications, rules (including car service, interchange, andother operating rules), practices, routes, services, andfacilities of such carriers; and
 {¶ 15} (2) the construction, acquisition, operation,abandonment, or discontinuance of spur, industrial, team,switching, or side tracks, or facilities, even if the tracks arelocated, or intended to be located, entirely in one State, isexclusive. Except as otherwise provided in this part[49 USCS 10101 et seq.], the remedies provided under this part[49 USCS 10101 et seq.] with respect to regulation of rail transportationare exclusive and preempt the remedies provided under Federal orState law.
 {¶ 16} CSX contends that claims for property damage caused by vibrations are subject exclusively to the ICCTA, and that federal law preempts state or local law where the intent of Congress to preempt the state or local law is clear and explicit.[5]
 {¶ 17} The preemption provision of the Federal Railway Safety Act ("FRSA") as outlined in 49 U.S.C. sect. 20106, however, provides,
{¶ 18} (1) is necessary to eliminate or reduce an essentiallylocal safety or security hazard;
 {¶ 19} (2) is not incompatible with a law, regulation, ororder Laws, regulations, and orders related to railroad safetyand laws, regulations, and orders related to railroad securityshall be nationally uniform to the extent practicable. A Statemay adopt or continue in force a law, regulation, or orderrelated to railroad safety or security until the Secretary ofTransportation (with respect to railroad safety matters), or theSecretary of Homeland Security (with respect to railroad securitymatters), prescribes a regulation or issues an order covering thesubject matter of the State requirement. A State may adopt orcontinue in force an additional or more stringent law,regulation, or order related to railroad safety or security whenthe law, regulation, or order — of the United States Government;and(3) does not unreasonably burden interstatecommerce.[6]
 {¶ 20} Cannon conversely asserts that under this provision, the homeowners' claims are not subject to the broad preemption provisions of the ICCTA, but are instead governed by the narrow preemption provisions of the FRSA, and their claims are therefore exempted. They further claim that, unlike the ICCTA, which preempts all state economic regulation, the FRSA preempts only those state laws that: (1) are covered by the FRSA or the regulations issued by the Federal Railway Administration (FRA"); or (2) if covered by a regulation, are necessary to eliminate or reduce a local safety hazard.[7]
 {¶ 21} "Congress and the courts have recognized a need to regulate railroad operations at the federal level,"[8] and Congress' authority under the Commerce Clause is well established.[9] State statutes and local ordinances often do not survive an ICCTA preemption challenge,[10] and likewise, courts have consistently found that common law claims regarding railroad operations are also preempted by the ICCTA.[11] Although the STB has found that state and local regulation is permissible where it does not interfere with interstate rail operations, and localities retain certain police powers to protect public health and safety,[12] in reference to the ICCTA, and as held in CSX Transp. v. GeorgiaPub. Serv. Comm., "it is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations."[13]
 {¶ 22} In City of Auburn v. United States,[14] the Ninth Circuit held that the ICCTA preempted state and local environmental laws permitting a rail carrier to acquire and improve a 151-mile rail line and re-establish a new route. Similar to the case at hand, the acquisition proposal in City ofAuburn was reviewed and approved by the STB for its economic and environmental effects. Although the City argued that Congress' intent was only to preempt state economic regulation of railroads, the court rejected this argument with the finding that if local authorities have the ability to impose environmental regulations on the railroad, this will, in essence, amount to economic regulation as well if the railway is prevented from constructing, acquiring, operating, abandoning or discontinuing a line.[15] As held in Guckenberg v. Wisconsin CentralLtd., "state regulation can be as effectively exerted through an award of damages as through some form of preventive relief."[16] Through state law claims, the Berea homeowners are attempting to regulate the exact form of rail transportation that the ICCTA was designed to prevent.
 {¶ 23} Further, the homeowners in the instant case contend that excessive railway vibrations caused significant damages to their homes, and assert various tort claims based on these damages. These claims directly relate to the rail transportation itself, a concept addressed in Pejepscot Industrial Park v. MainCentral Railroad Co., where the court held that awards of damages under state tort claims may qualify as state "regulation" when applied to restrict or burden a rail carrier's operations.[17] Awards of damages of this nature may serve to impermissibly regulate rail transportation.[18]
 {¶ 24} Cannon contends that Rushing v. Kansas City SouthernRailway Co.,[19] ("Rushing II"), illustrates the difference in the type of claim preemption that they seek. InRushing II, the court found that it had jurisdiction over plaintiff's state law nuisance law and negligence claims where a railroad's operations along a regular line that caused physical damage to property. However, the court specifically noted that the plaintiff's negligence claims related to the design and/or construction of a berm by the railway, and that this design/construction was governed by state law. Further, theRushing II court held that the plaintiff's claims that related to noise and vibrations from railway switching operations were preempted by the ICCTA because they were an attempt to regulate rail operations and therefore potentially interfered with interstate rail operations, which would impose an economic regulation on the industry.[20] In the instant case, the homeowners never alleged difficulties as it related to the construction of a berm, and only alleged negligence arising from operating and controlling — two duties that related to the economic function of the railway.
 {¶ 25} Finally, and in addition to an economic analysis, the EIS provided the STB with an exhaustive environmental study which concluded that increased traffic on the CSX line through Berea would cause significant noise impacts to certain residents and recommended mitigation, further stating that the agreement with the city of Berea was designed to mitigate those noise impacts. Neither the STB opinion nor the agreement with the City of Berea identify any other local conditions on either Abbyshire Road or North Rocky River Drive which warranted mitigation. Moreover, the STB opinion required no mitigation measures for increased vibration anywhere along the disputed route. To allow an award of damages under tort claims is against both the express language of49 U.S.C. 10501(b), and the STB's approval of the Conrail acquisition.
 {¶ 26} Cannon's sole assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J.*, and Calabrese, Jr., J., concur.
*Judge Anne L. Kilbane concurred in judgment, but did not have the opportunity to review this journal entry and opinion prior to her death on November 23, 2004.
(The ohio constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements. See State v. Pembaur (1982), 69 Ohio st.2d 110.)
 APPENDIX
ASSIGNMENT OF ERROR
I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT GRANTED DEFENDANT'S MOTION TO DISMISS FOLLOWING PLAINTIFF'S OPENING STATEMENT.
[1] Surface transportation board, STB Finance Docket No. 33388 CSX corporation and CSX transportation, Inc., Norfolk Southern corporation and norfolk southern railway company control and operating leases/agreements — conrail Inc. and consolidated rail corporation, Decision No. 89, Decided: July 20, 1998, pg. 148.
[2] CSX claimed that traffic would increase from approximately 15 freight trains per day to approximately 54 freight trains per day, however, appellants claim the traffic increased to an amount of over a hundred trains per day, or one train every 15 minutes.
[3] Hunt v. Marksman Products (1995), 101 Ohio App.3d 760,762, 656 N.E.2d 726.
[4] State ex rel. Jones v. Suster (1998), 84 Ohio St.3d 70,75, 701 N.E.2d 1002, 1006-1007.
[5] Railroad Ventures, Inc. v. Surface Transportation Board
(6th Cir. 2002), 299 F.3d 523.
[6] We note that the statute was amended Nov. 25, 2002 (effective 60 days after enactment, as provided by sect. 4 of such Act, which appears as 6 USCS 101 note), in the introductory matter, inserted "and laws, regulations, and orders related to railroad security", inserted "or security" in two places, and substituted "Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters)," for "Transportation", and, in para. (1), inserted "or security".
[7] CSX Transportation, Inc. v. City of Plymouth (E.D. Mich. 2001), 92 F.Supp.2d 643.
[8] City of Auburn v. United States, (9th Cir. 1998),154 F.3d 1025.
[9] City of Auburn, supra.
[10] Friberg v. Kansas City S. Ry. Co. (5th Cir. 2001),267 F.3d 439, 444.
[11] Friberg, supra; Guckenberg v. Wisconsin Cen. Ltd.
(E.D. Wisc. 2001), 178 F. Supp.2d 954, Rushing v. Kansas City S.Ry. Cop, (S.D. Miss. 2001), 194 F. Supp.2d 493, 500-505; SouthDakota R.R. Auth. v. Burlington N. Santa Fe Ry. Co., (S.D. 2003), 280 F. Supp.2d 919, 934-935.
[12] In Stampede Pass, 2 S.T.B. 330 (1997).
[13] (N.D. Ga. 1996), 944 F. Supp. 1573, 1581.
[14] (9th Cir. 1998), 154 F.3d 1025.
[15] City of Auburn, supra at 1031.
[16] (E.D. Wisc. 2001). 178 F. Supp.2d 954, 958.
[17] (Maine 2003), 297 F.Supp.2d 326, 333.
[18] Pejepscot, supra at 333-334; see also South Dakota R.R.Auth., supra at 934 (finding that economic recoveries through tort claims could impact rates, routes and services.)
[19] (S.D. Miss. 2001), 194 F. Supp.2d 493, on remand from (5th Cir. 1999), 185 F.3d 496.
[20] Rushing II, supra at 499, 500.