[Cite as *State v. Huber*, 2012-Ohio-6139.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   98206

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOSEPH A. HUBER

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-521813

**BEFORE:** Boyle, P.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 27, 2012

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Daniel T. Van
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Joseph A. Huber, appeals from a judgment issued by the trial court after it resentenced him pursuant to a remand by this court. He raises three assignments of error for our review:

> [1.] The trial court lacked jurisdiction to proceed with resentencing because the appellate court's decision granting reconsideration was void where only two judges participated in the decision in violation of the Ohio Constitution.
>
> [2.] The trial court's imposition of consecutive sentences was contrary to law and an abuse of discretion.
>
> [3.] The trial court erred by ordering appellant to pay costs.

{¶2} Finding merit to his third assignment of error, we affirm in part, reverse in part, and remand for a limited resentencing hearing.

Procedural History and Factual Background

{¶3} In August 2009, Huber was convicted of kidnapping, attempted felonious assault, and two counts of aggravated robbery, all with repeat violent offender and notice of prior conviction specifications. The facts presented at a jury trial established that Huber and two others lured a delivery driver to their location, abducted him at knife point, forced him to make an ATM withdrawal from his personal bank account, and stole the proceeds. The trial court sentenced Huber to an aggregate 15 years in prison. Huber appealed his convictions and sentence, raising 15 assignments of error.

{¶4} This court originally issued a decision on Huber's direct appeal on November 18, 2010. *See State v. Huber*, 8th Dist. No. 93923, 2010-Ohio-5586 ("*Huber I*"). *Huber I* was heard and decided by three judges. Almost two months later (on January 13, 2011), however, two of the three judges granted the state's motion for reconsideration, vacated the original opinion, and issued a new opinion. *See State v. Huber*, 8th Dist. No. 93923, 2011-Ohio-62 ("*Huber II*"), *discretionary appeal not allowed by*, *State v. Huber*, 128 Ohio St.3d 1462, 2011-Ohio-1829, 945 N.E.2d 524, *reopening denied by*, *State v. Huber*, 8th Dist. No. 93923, 2011-Ohio-3240 (Huber also applied to this court for delayed reconsideration in June 2011, which we denied). *Huber II* indicates that Judge Ann Dyke did not participate in the reconsidered judgment.[1]

{¶5} In *Huber II*, this court affirmed Huber's convictions, but held that the trial court erred by merging the two aggravated robbery sentences after finding the offenses were allied offenses of similar import, rather than merging the two aggravated robbery convictions as required to do under the allied offenses law. *Id.* at ¶ 32. We further held that Huber's aggravated robbery conviction did not merge with his kidnapping or attempted felonious assault convictions. *Id.* at ¶ 35-36. We also affirmed the trial court's imposition of consecutive sentences, but determined that the trial court erred by not advising Huber of the consequences of violating the terms of his postrelease control. *Id.* at ¶ 30, 37. We remanded for resentencing. *Id.* at ¶ 38.

---

[1] Judge Ann Dyke retired in late 2010, and thus, was not available to participate in the reconsideration of the November 18, 2010 decision.

**{¶6}** Upon remand, the state elected to proceed on the first count of aggravated robbery. After hearing from defense counsel and Huber, the trial court merged the second count of aggravated robbery into the first count of aggravated robbery, and imposed a prison term of six years for the merged aggravated robbery offense. The trial court noted that Huber's sentence for kidnapping and attempted felonious assault remained the same, as well as the court's order that the aggravated robbery, kidnapping, and attempted felonious assault prison terms be served consecutive to one another. Thus, the trial court imposed an aggregate sentence of 15 years in prison. The trial court further notified Huber that he would be subject to five years of mandatory postrelease control and notified him of the consequences of violating that postrelease control. The trial court also ordered that Huber pay costs, over his objection. It is from this judgment that Huber appeals.

## Jurisdiction

**{¶7}** In his first assignment of error, Huber maintains that the trial court lacked jurisdiction to resentence him upon remand from this court in *Huber II* because *Huber II* was only decided by two judges, and therefore, was void. Huber submits that this court's original decision in *Huber I* should, therefore, be reinstated.[2]

---

[2]Reinstating *Huber I* would be beneficial to Huber because in *Huber I*, this court held that Huber's convictions for aggravated robbery and kidnapping were allied offenses of similar import, and should have been merged. *Id.* at ¶ 35. But in *Huber II*, we determined that under the facts of the case, Huber committed the aggravated robbery and kidnapping with a separate animus, and thus, the trial court did not err by not merging them. *Huber II* at ¶ 35.

**{¶8}** In Ohio, appellate courts obtain their authority from the Ohio Constitution. Ohio Constitution, Article IV, Section 3, provides in pertinent part:

(A) The state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals consisting of three judges. * * * In districts having additional judges, three judges shall participate in the hearing and disposition of each case.

* * *

(B) The courts of appeals shall have original jurisdiction in the following:

* * *

(2) Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district, except that courts of appeals shall not have jurisdiction to review on direct appeal a judgment that imposes a sentence of death. Courts of appeals shall have such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies.

(3) A majority of the judges hearing the cause shall be necessary to render a judgment.

**{¶9}** At the outset, we agree with the state that Huber waived his right to challenge the fact that *Huber II* was issued after reconsideration with only two of the original three judges participating. This court clearly had original jurisdiction over Huber's direct appeal "to review and affirm, modify, or reverse it." Thus, even assuming for the sake of argument that we should not have reconsidered the original decision with only two judges, that would be a question regarding the exercise of our jurisdiction; it would not make the reconsidered decision void ab initio. *See Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, syllabus (failure of trial

court to convene a three-judge panel in a death penalty case "does not constitute lack of subject-matter jurisdiction that renders a trial court's judgment void ab initio"; rather, it "constitutes an error in the court's exercise of jurisdiction that must be raised on direct appeal"). Although Huber appealed *Huber II* to the Ohio Supreme Court and raised 15 assignments of error, he did not challenge this issue.

{¶10} Nonetheless, we conclude that it was within our constitutional authority to issue the reconsidered *Huber II* decision with only two judges participating after one of the judges retired. We find *State v. Pembaur*, 69 Ohio St.2d 110, 430 Ohio St.2d 1331 (1982), to be instructive on this question. In *Pembaur*, the defendant's appeal was argued to a three-judge panel in November 1980. One of the judges who heard the case, Judge Gilbert Bettman, resigned on January 3, 1981. On February 18, 1981, the First District "rendered a split decision purporting to reverse the defendant's conviction," noting that Judge Bettman had "concurred in the foregoing decision prior to his resignation from the court." *Id.* The state appealed, arguing that the judgment of reversal was invalid because Judge Bettman "had no legal power to participate in the disposition of the case as he was not a judge of the court of appeals on the date the decision and judgment entry was rendered." *Id.*

{¶11} The Ohio Supreme Court, citing to the Ohio Constitution, Article IV, Section 3, explained:

> [U]nder the Ohio Constitution, a valid judgment of a court of appeals must have the concurrence of at least two judges. In the case at bar, this constitutional requirement was not satisfied. Although Judge Bettman may have indicated to his colleagues an opinion that the appellee's conviction should be reversed, on the date of disposition he no longer was a judge of

the Court of Appeals and was not qualified to participate in that court's decision. The remaining two judges differed as to the proper disposition of the cause.

(Citation omitted.) *Pembaur* at 111.

{¶12} The Ohio Supreme Court concluded in *Pembaur* that "[t]he constitutional requirement that a majority of the court of appeals judges hearing a cause concur in the judgment was not met in this case." *Id.* The high court vacated the First District decision and remanded the case to the appellate court for a hearing. *Id.*

{¶13} This court relied on the holding in *Pembaur* when Judge Anne L. Kilbane passed away in November 2004. We released many cases with only two judges (cases in which she had been one of the three judges to hear the case, but she died before the cases were released). Citing to *Pembaur*, we explained: "The Ohio Constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements." *See, e.g., Cannon et al. v. CSX Transp., Inc.,* 8th Dist. No. 84373, 2005-Ohio-99, and *State v. Powers*, 8th Dist. No. 84416, 2004-Ohio-7021. *See also Cardinal Fed. S. & L. Assn. v. Michaels Bldg. Co., et al.*, 9th Dist. No. 14521, 1991 Ohio App. LEXIS 2199 (May 8, 1991) (relying on *Pembaur*, the Ninth Appellate District released a decision with only two judges participating, noting that the third judge had retired prior to the disposition of the case).

{¶14} Accordingly, we conclude that it was entirely within our province to release *Huber II* on reconsideration with two judges concurring in the opinion after the third judge retired.

**{¶15}** Huber's first assignment of error is overruled.

Sentencing

**{¶16}** In his second assignment of error, Huber maintains that the trial court erred when it only resentenced him on the two aggravated robbery counts and postrelease control. He argues that the trial court should have conducted a de novo sentencing hearing on all of the offenses, as well as on the consecutive portion of his sentence, in light of H.B. 86. We disagree that the trial court should have sentenced him on kidnapping and attempted felonious assault because the *ranges* for those offenses remained intact after *Huber II*, but we agree that the trial court should have resentenced Huber de novo not only on his aggravated robbery offense and postrelease control, but also on the consecutive nature of his sentence.

1. "Sentencing Package" and Law of the Case Doctrines

**{¶17}** In Ohio, the "sentencing package" doctrine is not applicable. *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, paragraph two of the syllabus. Thus, "a judge sentencing a defendant pursuant to Ohio law must consider each offense individually and impose a separate sentence for each offense." *Id.* at ¶ 9. "Because Ohio does not 'bundle' sentences, nothing is 'unbundled' when one of several sentences is reversed on appeal." *Id.* at ¶ 13, 15. Furthermore, Ohio appellate courts do not have the authority to vacate an entire sentence when only a portion of that sentence is subject to remand. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 15. A sentencing hearing on remand is limited to the issue found to be in error on appeal. *Saxon* at paragraph three of the syllabus; *see also State v. Fischer*, 128 Ohio

St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph two of the syllabus (when postrelease control is invalid, "[t]he new sentencing hearing to which an offender is entitled * * * is limited to proper imposition of postrelease control.").

{¶18} In *Wilson*, the Supreme Court of Ohio analyzed the scope of a trial court's resentencing hearing following an allied-offenses error, holding:

> A remand for a new sentencing hearing generally anticipates a de novo sentencing hearing.  R.C. 2929.19(A).  However, a number of discretionary and mandatory limitations may apply to narrow the scope of a particular resentencing hearing.  * * *  In a remand based only on an allied-offenses sentencing error, the guilty verdicts underlying a defendant's sentences remain the law of the case and are not subject to review.  [*State v.*] *Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 26-27.  Further, only the sentences for the offenses that were affected by the appealed error are reviewed de novo; the sentences for any offenses that were not affected by the appealed error are not vacated and are not subject to review.  *Saxon* at paragraph three of the syllabus.

*Wilson* at ¶ 15.

{¶19} The Ohio Supreme Court explained that under the law-of-the-case doctrine, "'the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'"  *Fischer* at ¶ 33, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).  Further, "'[t]he remainder of the sentence, which the defendant did not successfully challenge, remains valid under the principles of res judicata.'"  *Id.* at ¶ 17, quoting *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 21-22 (O'Connor, J., dissenting, joined by Lundberg Stratton, J.).  Res judicata "still applies to other aspects of the merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence."  *Id.* at ¶ 40.

2.     Huber's Direct Appeal

**{¶20}** Huber was originally sentenced in August 2009. In his direct appeal, this court found errors in Huber's sentence only with respect to the two aggravated robbery counts (because they were allied offenses, we found that the trial court erred by merging the sentences and not the convictions) and postrelease control (we found that the trial court failed to inform Huber of the consequences of violating the terms of his postrelease control).

**{¶21}** Huber also challenged the consecutive nature of his sentence in his direct appeal. Following the law that was in place at that time for reviewing consecutive sentences (i.e., *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 517), this court affirmed the trial court's imposition of consecutive sentences.

3.     Analysis

**{¶22}** Although this court remanded for a resentencing hearing "consistent with this opinion," the effect of *Huber II* is that Huber's sentence for aggravated robbery and postrelease control were *vacated* because they were contrary to law. *See Wilson* and *Fischer*. Upon remand, according to *Wilson* and *Fischer*, Huber was entitled to a de novo sentencing hearing on both counts of aggravated robbery and postrelease control.

**{¶23}** The significance of this court's vacation of part of Huber's sentence is that upon remand Huber *did not have a sentence for aggravated robbery* or postrelease control. As part of Huber's de novo sentencing hearing, the state had to elect which aggravated robbery offense it was going to proceed on, which it did. The trial court then merged the aggravated robbery offenses and sentenced Huber to six years in prison for

aggravated robbery. The trial court then noted that Huber's sentence for attempted felonious assault and kidnapping remained the same, as well as the consecutive portion of Huber's original sentence, for an aggregate 15 years in prison. The trial court further notified Huber that he would be subject to five years of postrelease control and notified him of the consequences for violating that postrelease control.

{¶24} We find that the trial court did not err when it refused to resentence Huber on attempted felonious assault and kidnapping (because Huber did not successfully challenge the sentence for those offenses in his direct appeal, the sentencing ranges for those offenses remained the same). *See Fischer*, *Saxon*, and *Wilson*. We agree with Huber, however, that the trial court should have sentenced him de novo on the consecutive portion of his sentence. Normally, under the law of the case, the consecutive nature of a defendant's sentence would remain intact upon resentencing if this court affirmed it on direct appeal. But in this case (although we affirmed the consecutive nature of Huber's sentence in his direct appeal), the effect of *Huber II* is that Huber *did not have a sentence for aggravated robbery* when he was brought back into court for resentencing. In *Saxon*, the Ohio Supreme Court explained that "[o]nly after the judge has imposed *a separate prison term for each offense* may the judge then consider in his [or her] discretion whether the offender should serve those terms concurrently or consecutively." (Citations omitted.) *Id.* at ¶ 9. Thus, at the resentencing hearing in this case, the trial court first had to sentence Huber on the merged count of aggravated robbery — so that he had a separate prison term for each offense —

before it could consider whether the prison terms for the offenses should be served consecutively or concurrently. *Id.*

{¶25} When Huber was resentenced after a remand from this court, it was May 2012. In September 2011, H.B. 86 became effective. It is clear that the trial court was aware that H.B. 86 was applicable; it followed the mandates of H.B. 86 with respect to considering the newly amended R.C. 2929.11 (with the added language "to punish *the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources*"), as well as R.C. 2929.12. The trial court was also aware that Huber was entitled to the old sentence range (i.e., ten years maximum) for a first degree felony (not 11 years maximum as in H.B. 86). But the trial court simply did not believe, relying on the Ohio Supreme Court's holding in *Saxon*, that it could address the consecutive portion of Huber's sentence because this court had affirmed that portion of Huber's sentence in *Huber II*. This belief, however, was erroneous.

{¶26} R.C. 2929.14(C)(4), as revived, now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id.* Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease

control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*

{¶27} Although the trial court stated that it could not address the consecutive aspect of Huber's sentence, believing that it did not have to because this court affirmed that portion of Huber's sentence, we find after reviewing the transcript that the trial court did in fact make the proper R.C. 2929.14(C)(4) findings before imposing consecutive sentences. The trial court noted that it considered Huber's criminal history, which was extensive. It further stated:

> [1] I believe that the harm was so great or unusual that a single term would not adequately reflect the seriousness of the conduct and that the defendant's criminal history shows a consecutive sentence is needed to protect the public,

> [2] "I believe that the criminal history shows that the defendant is not amendable to any lesser punishment and that the consecutive sentences are necessary to protect the public and to punish the offender, and

> [3] The nature of these crimes were over an extended period of time where the victim here was stripped naked on two occasions, threatened with his life, and this continued for an extended period of time * * * clearly raises the level and nature of this crime above just a single sentence.

{¶28} We conclude that the trial court's express findings were sufficient under H.B. 86 and R.C. 2929.14(C) to impose consecutive sentences.

**{¶29}** Accordingly, we overrule Huber's second assignment of error.

Costs

**{¶30}** In his third assignment of error, Huber argues that the trial court erred when it ordered him to pay costs because it failed to warn him that if he did not pay costs, the court could require him to perform community service. The state concedes this error and we agree.

**{¶31}** R.C. 2947.23(A)(1)(a) provides that:

> In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, * * * and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:

> (i) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

**{¶32}** The Ohio Supreme Court has held that the notification under R.C. 2947.23(A)(1) is mandatory and must be given at the sentencing hearing. *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781, 964 N.E.2d 423, ¶ 10.

**{¶33}** Accordingly, we sustain Huber's third assignment of error and reverse and remand for a limited resentencing hearing on the issue of costs.

**{¶34}** Huber also raises four assignments of error pro se. But all of his assignments of error relate to his trial and convictions. This court is prohibited from reviewing any errors on appeal that Huber raises or should have raised in his direct

appeal. *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 40 ("The scope of an appeal from a resentencing hearing in which a mandatory term of postrelease control is imposed is limited to issues arising at the resentencing hearing.").

**{¶35}** Judgment affirmed in part, reversed in part, and remanded for a limited resentencing hearing as set forth in this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for a limited resentencing hearing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN JUDGMENT ONLY
WITH SEPARATE OPINION

LARRY A. JONES, SR., J., CONCURRING IN JUDGMENT ONLY:

**{¶36}** I concur in judgment only and write separately to address the issue of whether it was in this court's constitutional authority to issue *Huber II* with only two judges participating in the decision. I would find that it was not.

**{¶37}** I reluctantly agree with the majority that Huber waived the germane issue of whether this court could issue *Huber II* with only two judges participating in the decision because he did not appeal the issue with the Ohio Supreme Court. The trial court's proceedings on remand were not based on a void order; they were based on a voidable order. *See Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 860 N.E.2d 992, syllabus. As such, because Huber did not raise the issue in his direct appeal to the Ohio Supreme Court, he has waived his right to challenge the issue now.

**{¶38}** That being said, I would find that this court erred in granting the motion for reconsideration and issuing *Huber II* with only two judges participating in the decision. Section 3 of Article IV of the Ohio Constitution provides, in part:

> (A) The state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals consisting of three judges. * * * In districts having additional judges, three judges shall participate in the hearing and disposition of each case. * * *

> [B](3) A majority of the judges hearing the cause shall be necessary to render a judgment. * * *

**{¶39}** Thus, under Article IV, Sections 3(A) and (B)(3) of the Ohio Constitution, three judges must participate in the hearing and disposition of a case, but only a majority of two judges is necessary to render a judgment. "The plain language of Section 3(A), Article IV mandates that appellate cases shall be heard by at least three judges to ensure

that each case is properly reviewed * * *." *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 57-58, 2008-Ohio-4914, 896 N.E.2d 672.

{¶40} *Pembaur* does not stand for the proposition that if two judges on a three-judge panel concur on a case, that it is acceptable for a case to be decided by only two judges. This flies in the face of the Ohio Constitution's requirement that appellate cases in districts with more than three judges be heard and disposed of by a panel of three judges. Moreover, even though this court relied on *Pembaur* in issuing 14 cases decided by two judges in the months following Judge Anne Kilbane's death, in each of the cases Judge Kilbane had participated in the decision. *See Cannon v. CSX Transp., Inc.*, 8th Dist. No. 84373, 2005-Ohio-99, ¶ 26 ("Judge Anne L. Kilbane concurred in judgment, but did not have the opportunity to review this journal entry and opinion prior to her death"); *State v. Brown*, 8th Dist. No. 84322, 2004-Ohio-6421, ¶ 12 ("Judge Anne L. Kilbane concurred in this Journal Entry and Opinion prior to her death"); *State v. Washington*, 8th Dist. No. 83867, 2004-Ohio-7017, ¶ 9 ("Judge Anne L. Kilbane participated in this decision prior to her death.")

{¶41} In this case, although Judge Dyke participated in the hearing and decision on *Huber I*, there is no evidence that Judge Dyke participated in the motion for reconsideration at all. In fact, the *Huber II* opinion clearly states she did not participate.

{¶42} Holding as the majority does, one could argue that any case could be decided by two appellate judges, so long as those two judges concur. I find that to be unconstitutional. Moreover, in this case, the reconsidered opinion was detrimental to the defendant; the first opinion found that Huber's convictions for aggravated robbery and

kidnapping were allied offenses but upon reconsideration the panel found that his conviction for aggravated robbery did not merge with his convictions for kidnapping. Therefore, although constrained by the fact that Huber waived this issue, I would find that it was wholly improper for a panel of only two appellate judges in this district to consider and render a decision on a motion for reconsideration.